OPINIONS OF THE SUPREME COURT OF OHIO
       The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
       Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Whitten, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
       NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Allen et al., Appellants, v. R.G. Industrial Supply;
Rickenbacker et al., Appellees.
       [Cite as Allen v. R.G. Indus. Supply (1993),      Ohio St.
3d     .]
Negligence -- Torts -- Automobile accident -- When accord and
       satisfaction is pled by defendant as an affirmative
       defense, court's analysis must be divided into three
       distinct inquiries -- Two essential safeguards built into
       the doctrine of accord and satisfaction protect creditors
       or injured parties from overreaching debtors or
       tortfeasors.
1.  When an accord and satisfaction is pled by the defendant
       as an affirmative defense, the court's analysis must be
       divided into three distinct inquiries.  First, the
       defendant must show that the parties went through a
       process of offer and acceptance -- an accord.  Second, the
       accord must have been carried out -- a satisfaction.
       Third, if there was an accord and satisfaction, it must
       have been supported by consideration.
2.  Two essential safeguards built into the doctrine of
       accord and satisfaction protect creditors or injured
       parties from overreaching debtors or tortfeasors: (1)
       there must be a good-faith dispute about the debt, and (2)
       the creditor must have reasonable notice that the check is
       intended to be in full satisfaction of the debt.
       (No. 91-2411 -- Submitted January 12, 1993 -- Decided
May 19, 1993.)
       Appeal from the Court of Appeals for Summit County, No.
15005.
       On March 26, 1990, appellants, Charles and Darlene Allen,
filed a complaint in Summit County Common Pleas Court against
appellee James J. Rickenbacker, appellee Robert J.
Rickenbacker, and R.G. Industrial Supply.  The complaint
alleged that Robert Rickenbacker negligently caused a traffic
accident in which Charles Allen was injured.  The Rickenbackers
answered and pled, inter alia, accord and satisfaction as an
affirmative defense.  This appeal concerns whether either of
the Rickenbackers can succeed in this defense.

On March 28, 1988, the delivery truck driven by Charles Allen was rearended by a truck driven by Robert Rickenbacker. At the time of the accident Robert was an employee of R.G. Industrial Supply ("R.G. Industrial"). The truck he was driving belonged to his supervisor, James Rickenbacker, who was also an employee of R.G. Industrial. The parties agree that Robert was driving the truck as an agent of James or R.G. Industrial when the accident took place. In their answers both James and Robert admitted that Robert negligently caused the collision. As a result of the accident Charles suffered what appeared to be minor injuries; he was taken to a nearby hospital where he was treated and released.

Approximately two weeks after the accident, Charles was telephoned by an Allstate Insurance Company ("Allstate") agent representing James and his wife Jean. The agent told Charles that he would be sent a check for $200 for his hospital bill and lost wages. Charles had not, at the time of the call from Allstate, made any claim against Allstate or the Rickenbackers for compensation for any injuries arising out of the accident.

In late April, several days after the call from the agent, the Allens received from Allstate a check for $240, a release form, and a note. The front of the check bore the names "JEAN E & JAMES J RICKENBACKER" as "insured[s]." Next to the phrase "In payment of," the following statement was printed: "ANY AND ALL CLAIMS FOR BODILY INJURY BUT EXCLUDING ANY REASONABLE MEDICAL EXPENSES INCURRED WITHIN 6 MONTHS UP TO $500.00." The check was made out to Charles and Darlene Allen "individually and as husband and wife." The policy number, the claim number, and various other administrative information also appeared. The check did not make any reference to Robert Rickenbacker or to the date or circumstances of the accident itself. The back of the check was blank. Both Charles and Darlene Allen endorsed the check and it was cashed on June 2, 1988. (See Appendix.) Neither of the Allens signed the release form and it was not returned to Allstate. The note does not appear in the record.

In early July 1988 Charles began to experience back pain. Approximately four months later he sought medical attention for his back. The Allens allege damages as a direct result of the defendants' negligence.

The Rickenbackers filed a motion for summary judgment on their accord and satisfaction defense. Their motion was supported by the affidavit of the Allstate insurance agent who handled the Rickenbackers' claim. The court denied summary judgment; it found that the question of whether there had been a disputed claim had not been resolved.

The Rickenbackers deposed Charles on October 10, 1990. On January 8, 1991, they filed a second motion for summary judgment supported by Allen's deposition testimony. The trial court granted the Rickenbackers' motion and dismissed the case. The court held that Allen's testimony included an admission that he "understood the check was in consideration of full release against [the Rickenbackers]." The court of appeals affirmed.

The cause is now before the court pursuant to the allowance of a motion to certify the record.

Willis & Linnen Co., L.P.A., and Jerome T. Linnen, Jr., for appellants.

Nukes, Perantinides & Nolan Co., L.P.A., and James J. Gutbrod, for appellees.

Wright, J.  The question presented is whether summary judgment in favor of James and Robert Rickenbacker was proper on the ground that the Allens' negotiation of the check sent to them by Allstate constituted an accord and satisfaction of all of their claims against the Rickenbackers.  For the following reasons we hold that summary judgment was not proper and, accordingly, reverse and remand for further proceedings.

I

Accord and satisfaction is an affirmative defense to a claim for money damages.  If a party against whom a claim for damages is made can prove accord and satisfaction, that party's debt is discharged by operation of law.

An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due.  Satisfaction is the performance of that contract.  Air Van Lines, Inc. v. Buster (Alaska 1983), 673 P.2d 774, 777, 42 A.L.R. 4th 1, 5; see Calamari & Perillo, Contracts (3 Ed. 1987) 214-215, Section 4-11.  In Ohio, the situation in which an accord and satisfaction can arise is well settled:

"Where there is a bona fide dispute over an unliquidated demand and the debtor tenders an amount less than the amount in dispute, upon the express condition that it shall be in full [satisfaction] of the disputed claim, the creditor has but one alternative; he must accept the amount tendered upon the terms of the condition, unless the condition be waived, or he must reject it entirely, or if he has received the amount by check in a letter, he must return it."  Seeds Grain & Hay Co. v. Conger (1910), 83 Ohio St. 169, 93 N.E. 892, paragraph one of the syllabus.

When an accord and satisfaction is pled by the defendant, the court's analysis must be divided into three distinct inquiries.  First, the defendant must show that the parties went through a process of offer and acceptance -- an accord.  Second, the accord must have been carried out -- a satisfaction.  Third, if there was an accord and satisfaction, it must have been supported by consideration.  Calamari & Perillo, supra, at 215, Section 4-11.  The first and second inquiries merge when the creditor manifests acceptance of the offer by negotiating a check sent by the debtor with the offer.  "At common law, an accord and satisfaction is accomplished when a creditor accepts and deposits a check which the debtor offers as full payment for an unliquidated or disputed debt. *** By cashing the check, the creditor manifests assent to the terms of a new contract which extinguishes the debtor's prior contractual obligation."  AFC Interiors v. DiCello (1989), 46 Ohio St.3d 1, 6, 544 N.E. 2d 869, 873 (H. Brown, J., dissenting on other grounds); see Platt v. Penetryn System, Inc. (1949), 151 Ohio St. 451, 39 O.O. 273, 86 N.E.2d 600, syllabus; 15 Williston on Contracts (3 Ed. 1972) 542, Section 1854.

Two essential safeguards built into the doctrine of accord

and satisfaction protect creditors from overreaching debtors:
"[1] there must be a good-faith dispute about the debt and [2]
the creditor must have reasonable notice that the check is
intended to be in full satisfaction of the debt."  AFC
Interiors, supra, at 12, 544 N.E.2d at 878 (H. Brown, J.,
dissenting on other grounds).  See, also, Seeds Grain, supra,
paragraph one of the syllabus ("[W]here there is a bona fide
dispute over an unliquidated demand and the debtor tenders an
amount less than the amount in dispute, upon the express
condition that it shall be in full [satisfaction] of the
disputed claim ***."  [Emphasis added.]).

If there is not an actual dispute between the parties,
there cannot be an accord and satisfaction.  See West Penn
Power Co. v. Nationwide Mut. Ins. Co. (1967), 209 Pa.Super.
509, 512, 228 A.2d 218, 220 (a dispute is "an essential element
of accord and satisfaction").  There are two reasons for this
requirement.  First, if there is no dispute, the accord would
not be supported by consideration because the creditor would
not be giving anything up in exchange for the payment from the
debtor; if there is an actual dispute, the creditor is
sacrificing a real claim against the debtor for further
damages.  Second, requiring a bona fide dispute protects
unsophisticated creditors because it ensures that they are
aware that they are giving something up in return for the
debtor's offer.  In light of the importance of this safeguard,
there is a bona fide dispute, in a tort case, only if the
injured party has expressly asked the alleged tortfeasor for
compensation of some sort for his or her injury.

The second safeguard requires the creditor to be given
reasonable notice that the check sent by the debtor is intended
as full satisfaction of the alleged debt.  "The rule relating
to an offer of accord is that the offer must make clear that
the offeror seeks a total discharge.  If this is not done any
payment made and accepted will be treated as part payment."
Calamari & Perillo, supra, at 215, Section 4-11.  To achieve an
accord and satisfaction the debtor must make it clear, in the
eyes of a reasonable person, that the check is being tendered
only on condition that it is taken in full payment of the
disputed claim.  A corollary to this rule is that the intention
of the creditor in negotiating the check is not relevant.  See
Air Van Lines, supra, at 779, 42 A.L.R. 4th at 7-8 ("regardless
of [the creditor's] intentions, a purported reservation of
rights is ineffective when a clearly conditional tender is
accepted").

A defendant can prove the existence of such a clear
expression either by evidence of an agreement between the
parties or by the words appearing on the check itself.  If the
debtor and creditor (tortfeasor and injured party) reached a
clear agreement that the debtor would send the creditor a check
in exchange for a full discharge, an accord may be proved by
evidence that the debtor's offer was expressly conditional and
that the condition was a full release.  If the creditor
subsequently cashes the check, there is a satisfaction.  In the
alternative, a debtor can send the creditor a check on which is
printed a clear and express notice that negotiation of the
check by the creditor fully releases the debtor from further
liability.  If the creditor negotiates such a check, an accord

and satisfaction is reached.  Thus, the reasonable-notice requirement can be proved either by extrinsic evidence of agreement or by sufficient notation on the check.

Accord and satisfaction defenses most frequently are seen in cases in which a contract claim provides the underlying cause of action.  To date this court has dealt with accord and satisfaction only in contract cases.  However, because accord and satisfaction involves the creation of a new agreement between the parties, AFC Interiors, supra, at 8, 544 N.E.2d at 875 (H. Brown, J., dissenting on other grounds), it is not dependent on the existence of an underlying contract and the doctrine is applicable to the settlement of tort claims.  See, e.g., Mullinax v. Shaw (1977), 143 Ga. App. 657, 239 S.E.2d 547; Wiggin v. Sanborn (1965), 161 Me. 175, 210 A.2d 38; Texas & Pacific Ry. Co. v. Poe (Tex. 1938), 115 S.W.2d 591.  In a tort case an accord and satisfaction arises from an offer by the tortfeasor to pay the injured party a certain sum in exchange for a release of the tortfeasor from further liability.  The only difference between cases in which the underlying claim sounds in contract and those which are based on tort claims is that courts must be particularly careful to protect injured parties from overreaching tortfeasors.  In contract cases the parties have dealt with one another before and the nonbreaching party (the creditor) will generally have a relatively full understanding of the extent of his or her damages at the time of the settlement offer.  In tort cases the parties have been thrown together by chance and the injured person (the creditor) may not know the full extent of his or her injuries when the tortfeasor first offers to compromise the claim.  Accordingly, when accord and satisfaction is pled in a tort case the court must pay close attention to whether the safeguards built into the doctrine have been satisfied.

II

The trial court granted summary judgment to both James and Robert Rickenbacker.  Under Civ.R. 56(C), summary judgment may be granted only if three conditions exist:  (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence submitted by the parties, viewed in the light most favorable to the nonmoving party, would lead reasonable minds to but one conclusion and that conclusion is adverse to the nonmoving party.  Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E.2d 267, 274.  "The grant of a Civ. R. 56 motion terminates litigation without giving the opposing party the benefit of a trial on the merits.  The requirements of the rule must be strictly enforced."  Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141.  Because slightly different analyses are necessary for the two Rickenbackers, each defendant will be dealt with separately.

A

James Rickenbacker is not entitled to summary judgment because the evidence submitted by the parties to the trial court leaves unresolved genuine issues of material facts. Reasonable minds, viewing the evidence in the light most favorable to the Allens, could conclude that there was no actual dispute between the parties or that there was no clear expression by James or his insurance agent that the check was

being offered in full satisfaction of all claims.

The court of appeals found that from the "undisputed evidence *** reasonable minds could only conclude that the parties genuinely disputed the amount of damages due Charles [Allen]." The court reasoned that a dispute between the parties is evidenced by the tender of a $240 check by Allstate and the Allens' refusal to sign the accompanying release. The court also held that it was not necessary for Charles to make a demand on the Rickenbackers in order to create a dispute. We disagree.

The court of appeals' position that the Allens' refusal to sign the release was evidence of a dispute is logically inconsistent with its conclusion that the negotiation of the check demonstrated agreement to the release of the Rickenbackers from further liability. The Allens cannot have agreed to full settlement and simultaneously disputed the amount paid in settlement. Moreover, in a tort case, some sort of claim, demand, or request by the injured party for compensation from the tortfeasor is essential to create a bona fide dispute which can be settled by an accord and satisfaction.

The evidence submitted by the parties in support of and in opposition to summary judgment does not show that the Allens made any sort of request for compensation before Allstate sent them the check. In fact, Charles Allen's deposition testimony would seem to support exactly the opposite conclusion. Therefore, we hold that there remains a genuine issue whether there was a bona fide dispute between the parties.

In addition to a bona fide dispute, the debtor must show that express notice was given to the creditor that if the offer was accepted the debtor would be released from further liability. As discussed above, the offer necessary for an accord and satisfaction may be proved by the language printed on the check itself or by extrinsic evidence of an agreement between the parties. The court of appeals held that the statement on the check that it was compensation for "any and all claims for bodily injury" was sufficient to notify the Allens that both James and Robert Rickenbacker were to be released from further liability. Again we disagree.

As a matter of law, the printed statement on the face of the check is insufficient to constitute express notice to the Allens that it was offered in exchange for a full release. The check did indicate that it was from Jean and James Rickenbacker and was intended to settle "all claims." However, for the check alone to be sufficient it would have to contain express references to the date of the alleged tort, an explicit statement that it is the final payment to be made by the tortfeasor, and a reference to the terms appearing on the front of the check printed above the signature line(s) on the back of the check. This information is necessary to ensure that the injured party knows exactly what he or she is giving up in exchange for the payment.

An example of sufficient language appears in the Maine case of Wiggin v. Sanborn, supra. The Wiggin court described a check with a satisfactory notation as follows:

"On the face of the draft appeared the name and address of the assured, a reference to the date of the accident and the

following language: 'In satisfaction of all claims.'  In addition an 'X' was typed in a box opposite the word 'Final.'" Wiggin, 161 Me. at 177, 210 A.2d at 39.

The Wiggin court concluded that this language left "no room for doubt as to the intention of the debtor and could not reasonably be misunderstood by the creditor."  Id., 161 Me. at 180, 210 A.2d at 41.

In this case the check sent to the Allens by Allstate did not give the Allens reasonable notice that it was intended as full satisfaction of all claims.  The statement "any and all claims for bodily injury" is simply not sufficient in the absence of more explicit words of reference to the date of the injury and the proposed finality of the agreement.1  Moreover, the back of the check contained no reference to the terms printed on the front of the check.

An alternative way to prove that the check was offered on the express condition that the tortfeasors be fully released is to establish by extrinsic evidence that the tortfeasor made such an offer directly to the injured party.  There is no such evidence in the record of this case.  The court of appeals focused on Charles Allen's understanding of the purpose of the check.  However, even if his deposition testimony could be read to show that he believed the check to be in full satisfaction of all claims,2 Allen's intent or understanding is not dispositive.  See Air Van Lines, supra.  The only relevant question is whether when the tortfeasor sent the check he expressly communicated the condition that its acceptance constitute a release from further liability.  There is no evidence of such an express notice in the record.

We hold that genuine issues as to material facts exist and, therefore, summary judgment was not proper.  On remand it will be for the jury to determine whether an actual dispute existed and whether James Rickenbacker or his insurance agent ever gave the Allens express notice that the check was being offered only in exchange for a release from further liability.

B

Even if the jury were to decide the above factual questions in favor of James Rickenbacker, Robert Rickenbacker cannot succeed in his accord and satisfaction defense.  As a matter of law, the Allens' negotiation of the Allstate check does not release Robert from further liability.

R.C. 2307.32(F) provides in part:

"When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to person or property or the same wrongful death, the following apply:

"(1) The release or covenant does not discharge any of the other tortfeasors from liability for the injury, loss, or wrongful death unless its terms otherwise provide, but it reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater ***."

In Beck v. Cianchetti (1982), 1 Ohio St.3d 231, 1 OBR 253, 439 N.E.2d 417, paragraph one of the syllabus, we held that "R.C. 2307.32 requires that a release expressly designated by name or otherwise specifically identify or describe any

tortfeasor to be discharged. ***"  If the factual questions are resolved in James Rickenbacker's favor, the Allstate check must be treated as a release.  The mere fact that Allstate sent the Allens a release form along with the check does not mean, as a matter of law, that the check was not a release.  If a jury finds that negotiation of the check was an accord and satisfaction, the check was the functional equivalent of a release even if it was not so identified.

The intent of the General Assembly would be undermined if the Allstate check is not treated as an attempted release.  By enacting R.C. 2307.32 the legislature clearly intended to protect injured parties against inadequate releases.  If the requirements of R.C. 2307.32 could be avoided by simply issuing a vaguely worded check that does not identify all tortfeasors, the protections intended by the statute would be defeated.  In a tort case, therefore, a check is subject to the same requirements as a formal release.  Because the language on the check sent by Allstate did not designate by name or specifically identify or describe Robert Rickenbacker, it was not sufficient to release him from further liability.

We hold that Robert Rickenbacker's affirmative defense of accord and satisfaction fails as a matter of law because the Allstate check did not specifically identify him.

III

The judgment of the court of appeals is reversed and the cause is remanded to the Summit County Court of Common Pleas for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

Moyer, C.J., and A.W. Sweeney, J., concur.

F.E. Sweeney, J., concurs in the syllabus and judgment only.

Douglas, Resnick and Pfeifer, JJ., concur in judgment only.

FOOTNOTE:

1  The phrase "any and all claims" could quite reasonably be understood to mean "claims to date."  The Allens essentially claim that this was their understanding of the phrase.

2  The court of appeals relied on the following exchange which occurred during Allen's deposition:

"Q.  When you received the check from Risa Gabor from Allstate Insurance Company, why did you believe you were receiving that money, from a result of what?

"A.  Why did I believe I was getting it?

"Q.  Right.

"A.  The result of the accident.

"Q.  Which accident was that?

"A.   The one we're -- what's the name -- R. G. Industry driver hit me at Richfield.

"Q.  So you knew at the time that Allstate was sending you that money with regards to the accident and as a result of Robert Rickenbacker rearending you.

"A.  Uh-huh.

"Q.  Did you believe that the check was issued, although it says at the top from Jean and James Rickenbacker, that this check was issued as a settlement or as payment for what you had

called time off work and pain and suffering from Robert Rickenbacker --

"A.  You mean did I think it came from them?

"Q.  Well, my question is the money, the $240 that you had received from what you had described as time off work and pain and suffering, was from Robert Rickenbacker rearending you on March 28.

"A.  Oh, yes.  You mean as a result of that.

"Q.  Right."

This exchange, we believe, merely shows that Allen believed that the $240 was sent as a result of the accident, not that it was sent in satisfaction of further liability.