In October 1992, appellant, a legal publisher, wrote appellee, a law firm, offering to prepare the record and briefs for an appeal to the Supreme Court of Ohio. Appellee represented the defendant in State ex rel. Celebrezze v. NationalLime Co. Appellant orally estimated that the cost of copying the record and printing the briefs would not exceed $8,000. Appellee claimed it requested an itemized written estimate of appellant's services, but never received one.
Appellee, nevertheless, directed appellant to prepare the record for filing. Appellee instructed appellant to omit four hundred fifty-five pages of materials, which were primarily deposition transcripts. Appellant, however, included those materials in the record.
On December 21, 1992, appellant sent appellee an invoice for $9,305. Of that amount, $9,080 was for copying nine hundred eight pages of the record at $10 per page.
On December 28, 1992, appellee sent a letter to appellant protesting the per page copying charge and disputing the charges for materials which appellant had included in the record despite appellee's instructions to the contrary. Appellee offered to pay $2.50 per page, which together with some other minor charges, would total $1,357.50.
For the fifteen months the case was pending in the Supreme Court, the record is silent as to any action between these parties. According to appellee's affidavit, appellant submitted a bill to the Supreme Court on February 9, 1994 for $9,398.05.[1] On March 2, 1994, the Ohio Supreme Court issued its decision in favor of appellee's client and awarded costs to appellee's client, including $9,389.05 for printing the record.
Subsequently, the state of Ohio, appellee's opponent in the case in the Supreme Court, petitioned to reduce the costs taxed against it as the losing party; the state of Ohio claimed the printing bill was excessive. On March 18, 1994, appellee notified the Clerk of the Ohio Supreme Court by letter that the bill with appellant was disputed and that "the parties might productively join together in assessing what may be reasonably due [appellant]." Appellee sent a copy of that letter to appellant together with a cover letter asking appellant to "deal with the issues presented."
On March 29, 1994, appellee formally responded to the state of Ohio's petition to reduce costs, agreeing with the state that the printing charges were excessive and asking the Supreme Court for time to negotiate a reasonable amount due appellant. According to the certificate of service, no copy was served on appellant, who was not a party to the Supreme Court litigation. The next day, however, appellee wrote appellant offering to pay him $1,357.50, as offered in the letter of December 28, 1992, and requesting that appellee reply the following day, March 31, 1994. Appellee concluded: "If such amount is not acceptable, you may expect no payment from us as our client has incurred substantial additional legal expense by our having to work through this and related issues with you."
On April 22, 1994, appellee and the state of Ohio stipulated that the state would pay appellee $650 for costs of the record. On May 9, 1994, the Supreme Court of Ohio entered its order reducing the original award of costs and ordered that the state of Ohio pay appellee $650 for costs of preparing the record.
On July 26, 1994, appellee mailed a check for $650 to appellant by certified mail return receipt requested. The enclosure letter stated:
 "Enclosed is our check for $650.00 which is tendered in full satisfaction of any claims which you or your company may have with regard to preparing the record in this case.
"Since you refuse (sic) to respond to earlier communications, we negotiated directly with the [State of Ohio] and entered an agreement to cap the cost of the record at $650.00 and the Supreme Court entered an order to that effect."
 "If you are not willing to accept this check, return it to us immediately. If the check is not cashed or returned to us by August 5, 1994, we will stop payment on it and will return to the [State of Ohio] the $650.00 advanced to us with regard to the payment of these costs. In such circumstances, we will not pay any amount to you with regard to the record, having exhausted all efforts to resolve this matter."
The letter and check were returned to appellee as unclaimed on August 17, 1994.
On July 22, 1998, appellant sued appellee for $9,398.05. In support, appellant attached the December 21, 1992 invoice for $9,305.00 and the March 2, 1994 judgment entry of the Supreme Court, showing the original award of $9,389.05. Appellee answered on August 18, 1998, denying it owed appellant that sum because it was excessive.
On November 17, 1998, appellee filed its motion for summary judgment. Appellee argued that appellant's claim was barred by laches and equitable estoppel because appellee had not responded to appellee's efforts to resolve the disputed amount. It supported its motion with affidavits from an attorney and paralegal of its law firm, as well as copies of all the documents referred to above, except for a copy of the bill appellant submitted directly to the Supreme Court.
In response, appellant asserted that laches, as an equitable defense, did not apply to an action in law for a sum due on a contract. In addition, appellant argued that appellee had no good basis to assert estoppel based on his alleged "tacit acceptance of [a] reduction of his fees."
The trial court rejected appellee's argument that appellant's claim was barred by laches. However, the trial court determined that because of his silence and inaction, appellant was estopped from asserting his claim.
Appellant now raises the following assignment of error:
 "The trial court erred in determining that [appellant] was equitably estopped from bringing an action at law for any compensation for services performed in preparation and filing of a record in the Ohio Supreme Court, and specifically erred in holding that the `induces another to believe certain facts' portion of equitable estoppel can be shown, in light of [appellant's] affirmative assertions on December 24, 19992 and February 9, 1994 that his bill was $9,398.05, by his silence or failure to respond to Marshall Melhorn's offer to settle the bill for $650.00 through April 22, 1994, some 73 days later, when Marshall Melhorn asserts it relied upon such silence as `acitly accepting a reduction of his fees' and entered in to an agreement with another party."
Summary judgment is deemed appropriate when the movant demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and construing the evidence most strongly in favor of the opposing party, that conclusion is adverse to the opposing party. SeeMinnick v. Lee (Feb. 12, 1999), Lucas App. No. L-98-1221, unreported, citing Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus.
Estoppel occurs when a person by acts, representations, or by silence when he ought to speak out, intentionally or negligently induces another to believe certain facts exist and the other justifiably relies and acts on that belief to his prejudice.State ex rel. Madden v. Windham Exempted Village School Dist. Bd.of Education (1989), 42 Ohio St.3d 86, 90 (citations omitted).
 "Equitable estoppel prevents a party from exercising rights which he might otherwise have had against one who has in good faith relied upon the conduct of that party. Apponi v. Sunshine Biscuits, Inc. (C.A.6 1981), 652 F.2d 643, 650 n. 8. The elements of equitable estoppel are: (1) representation by the party to be estopped; (2) the representation `communicates some fact or state of affairs in a misleading way;' (3) which induces reasonable, actual reliance by the second party; (4) who would `suffer prejudice or pecuniary disadvantage' unless the first party is estopped `from asserting an otherwise valid right in contradiction to his earlier representation.'" B B Enterprises v. Balser (Sep. 4, 1998), Williams App. No. WM-98-008, unreported (citations omitted).
Equitable estoppel does not arise because a creditor did not respond to its debtor's request to resolve a disputed account or declined to participate in the debtor's negotiations with a third party for reimbursement of that account. Appellant had no legal obligation to do either. A trial court cannot require a creditor to accept payment on an account according to the terms of a contract to which it was not a party. See, generally, Landis v.Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 343. To hold otherwise would permit debtors to circumvent the safeguards built into the doctrine of accord and satisfaction which are designed to protect creditors from overreaching debtors. Allen v. R.G.Industrial Supply (1993), 66 Ohio St.3d 229, 232.
In this case, the trial court erred by assuming that appellant, a creditor, had a duty to participate in fee-adjustment discussions with its debtor, appellee, as well as a third party. Although S.Ct.Prac.R. VII(5) allows the Supreme Court to refuse to tax costs to a losing party if a prevailing party has created unnecessary costs, such a decision does not eliminate the obligation of a prevailing party to pay its suppliers.
Appellee has also suggested that because appellant attached no materials to his response to the summary judgment motion, the trial court properly granted summary judgment in appellee's favor. On appeal, appellee suggests that because appellant did not provide a written agreement to support his claim, his invoice is not evidence of any agreement.
The party moving for summary judgment under Civ.R. 56 bears the burden of showing that there is no genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party satisfies this burden, the nonmoving party has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. Id." Minnick v Lee, supra.
In this case, appellee submitted most of the pertinent documents to the trial court. Other than a copy of the bill submitted to the Supreme Court of Ohio, which would be cumulative, we are unaware of what documents appellant might have submitted to support his opposition to appellee's motion for summary judgment. Appellee conceded it retained appellant to prepare the record. A party responding to a summary judgment motion "may rely upon evidentiary material submitted by the movant in support of his (the responding party's) argument that there is a genuine issue of material fact." AAAA Enterprises, Inc. v. River Place CommunityUrban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161. Whether the parties mutually agreed on the terms of the arrangement or whether appellant's invoice was reasonable create genuine issues of material fact.
Accordingly, appellant's assignment of error is found well taken.
The judgment of the Lucas County Court of Common Pleas is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. Costs are assessed against appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., JUDGE
James R. Sherck, J., JUDGE
Mark L. Pietrykowski, J., JUDGE
CONCUR.
[1] Apparently, appellee added an interest charge of one percent, or $93.05, to the original invoice amount of $9,305.00.