OPINION
Appellant, Julius J. Szabo, d.b.a. Evergreen Village, appeals the judgment entry of the Portage County Municipal Court, Ravenna Division, in which it rendered a decision in favor of appellee, Brian Wilson, d.b.a. Southwind Water Well Drilling.
It is important to note that there was no request for the trial court to issue any findings of fact or conclusions of law. Consequently, due to the fact that most of the evidence in this matter consisted of testimonial evidence, this Court is primarily limited to those facts determined by the trial court as set forth in its October 28, 1998 judgment entry after a bench trial that was conducted on October 1, 1998.
In the trial court's judgment entry, it found that appellant needed to drill a large water well to be used by mobile home residents at his mobile home park. Apparently, in the spring of 1993, appellant contacted John Pichan ("Pichan"), who was a well driller, about digging a well. Pichan indicated that the cost to drill the well would be approximately $9,000. However, due to the fact that the most suitable method of digging the well would be by employing a rotary drill, instead of the "pounding" drill used by Pichan, appellee drilled the well for appellant. Apparently, the proximity of the well to surrounding mobile homes would make the use of a rotary drill more suitable due to the fact that it would create less noise than a pounding drill and would drill at a faster rate of speed.
Although there was contradictory testimony concerning how appellee's services were enlisted for the project, the trial court found that: (1) there was no agreement signed between appellant and Pichan for the job, (2) appellant and appellee had an oral contract to drill a ten inch water well at the rate of $18 per foot for drilling and $18 per foot for casing, (3) appellant was required to perform clean-up of the cuttings (sludge), (4) appellee was not required to perform a twenty-four hour pump test by the oral agreement, and (5) appellee was required to file a well log, but delayed filing one until he had been paid. The trial court further found that the well log was ultimately filed. Appellant admitted in its answer that he and appellee entered into an oral contract for the drilling of a well.
Importantly, appellant sent a check to Pichan in the amount of $4,000 as partial payment for the well drilling. Pichan endorsed the check over to appellee. Upon completion of the drilling, appellee delivered an invoice to appellant in the amount of $11,304. The invoice credited appellant's $4,000 payment given to him by Pichan and an additional $2,000 paid directly to him by appellant. Thus, there was an outstanding balance totaling $5,304. Appellee brought suit against appellant for the remaining unpaid amount.
In his counterclaim, appellant sought to recover the cost of cleaning up the cuttings after the well was drilled, the charge for the twenty-four hours well test that was performed by a third party, and the cost of a rented compressor that was utilized by appellee. The trial court determined that the twenty-four hour pump test was not part of the agreement between the parties, but did find that the rental of the air compressor, which totaled $1,200, was the responsibility of appellee because it related directly to the drilling of the well. As previously indicated, the court also found that appellant was responsible for cleaning-up of the sludge.
Based upon the evidence, the trial court found by a preponderance of the evidence that appellee was entitled to an additional $5,304 for his services in drilling appellant's well. The court further decided that appellant was entitled to the $1,200 expense incurred in renting the air compressor. Thus, a net judgment in the amount of $4,104 was rendered in favor of appellee. Interest on the judgment also was established and was awarded at the rate of ten percent per annum from the date of the judgment.
Appellant now timely appeals the trial court's October 28, 1998 judgment entry, raising the following assignments of error:
 "[1.] The trial court erred to the prejudice of defendant-appellant in finding that under the terms of the contract between the parties, plaintiff-appellee was entitled to judgment in the amount of $5,304.
 "[2.] The trial court erred to the prejudice of defendant-appellant in failing to find that an accord and satisfaction had been reached between the parties.
 "[3] The trial court erred to the prejudice of defendant-appellant in failing to award damages for clean up [sic] costs to defendant-appellant."
In the first assignment of error, appellant avers that the weight of the evidence precluded the trial court from finding that appellee was entitled to an additional $5,304 for his services. Appellant claims that the evidence precluded such a finding because Pichan and appellee only presented testimonial evidence that the project would cost $18 per foot for the drilling and $18 per foot for the casing, and that the project had a price ceiling.
Appellant further argues that he presented significant evidence that the price of the work was to total $9,000. In support of that contention, appellant says that he presented testimony of his mobile home park manager and that of Douglas Frontz ("Frontz"), who is a third generation driller that has been in the business for twenty-six years and testified that $9,000 would be a fair price for the drilling of appellant's well. Frontz also testified that as part of the $9,000 price, appellee should have drilled the well, installed the casing, performed all clean-up operations, filed a well log, and conducted a twenty-four hour pump test. In addition, appellant states that he supported his argument regarding the contract price by submitting into evidence a copy of the original $4,000 check he had tendered to Pichan, which contained the following inscriptions:
"Well approx. $9,000.00
Ck No. 20003 $4,000.00
 Shalersville Balance due: $5,000.00"
Finally, appellant contends that there is no dispute that Pichan endorsed the check and turned over to appellee, who then endorsed it without reservation and proceeded to negotiate it prior to commencing work.
The standard to be applied in addressing a manifest weight issue in a civil case was articulated in Gerijo, Inc. v. Fairfield
(1994), 70 Ohio St.3d 223, 226:
 "[J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, * * *, syllabus. [A reviewing court] must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, * * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v. Ross
(1980), 64 Ohio St.2d 203, * * *." (Parallel citations omitted.)
In Seasons Coal, the Supreme Court of Ohio discussed the rationale behind the practice of giving deference to the findings of the factfinder:
 "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *." 10 Ohio St.3d at 80.
In appellant's first assignment of error, the issue that this Court must resolve in our manifest weight inquiry is whether the total price of the drilling project is $9,000 or $11,304. It is undisputed that the cost of drilling the well was $18 per foot for drilling and $18 per foot for casing. Thus, the dispute centers upon whether there existed a price ceiling of $9,000. Appellant claims that there was, while appellee denies any such arrangement.
When this matter was heard before the trial court in the form of a bench trial, the court was presented with conflicting testimony about the price. Pichan testified that the price was fixed at $36 per foot and that he always charged only by the number of feet drilled. Appellee also testified that the project was to be charged by the foot, with no price ceiling. In contradiction to such testimony, appellant provided the testimony of his mobile home park manager and that of Frontz, a drilling expert witness who testified that $9,000 would be a fair price for the project. However, there was no testimony that $11,304 was unreasonable or in contravention to the norms of the industry. Finally, appellant presented the check with the notation that the cost of the well would approximate $9,000.
As set forth in Seasons Coal, we must defer to the findings of the trial judge, who was sitting as the trier-of-fact, and resolve any contradictory evidence in favor of appellee under the facts of this case. Accordingly, we conclude that the judgment was supported by competent, credible evidence going to all the material elements of the case and must, therefore, not be reversed as being against the manifest weight of the evidence. With regard to the check written to Pichan, the fact that it states that the cost for the well would be approximately $9,000 does not adequately prove that a price ceiling of such amount was established. Such annotation also does not necessarily extend to a subsequent endorser such as appellee. Thus, appellant's first assignment of error is not well-taken.
In the second error assigned, appellant claims that by accepting his check made out to Pichan, appellee impliedly accepted to be bound by the terms written on that check when it was negotiated to him. Appellant argues that this is especially true in this case because the check was deposited by appellee without any reservation of rights. Therefore, appellant states that appellee was bound by a project ceiling limit of $9,000 by virtue of the notation on the check, because an accord and satisfaction was created when appellee accepted and deposited the check.
An "accord" is a contract between a debtor and a creditor that settles the creditor's claim in exchange for a sum of money other than that which is allegedly due. Allen v. R.G. Indus. Supply
(1993), 66 Ohio St.3d 229, 231. "Satisfaction" is the performance of the contract. Id. An "accord and satisfaction" is an affirmative defense that must be proven by a preponderance of the evidence. Id.;Dawson v. Anderson (1997), 121 Ohio App.3d 9, 13.
Civ.R. 8(C) states, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, * * * and any other matter constituting an avoidance or affirmative defense." The failure to plead the affirmative defense of accord and satisfaction constitutes a waiver of that defense on appeal.Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 4. However, Civ.R. 15(A) must be read in conjunction with Civ.R. 8(C) and permits litigants to amend their pleadings and later raise any affirmative defenses. Id.
A review of the record reveals that appellant failed to raise the affirmative defense of accord and satisfaction in either his original answer or his amended answer, and otherwise failed to invoke that defense. Consequently, under Sumlin, appellant has waived the ability to now raise such defense.
Moreover, as discussed in addressing the first assignment of error, the notation stating, "Well approx. $9,000" does not establish a price limit of $9,000 on the project. Instead, it works as an estimate of the project cost.[1] Based on the nature of the work at issue in this matter, namely drilling a well, and the particular facts of the case, it is our conclusion that a total cost of $11,304 is within a reasonable degree of proximity to the estimate. After all, it represents an increase of only $2,304. Therefore, appellant's second assignment of error is without merit.
In his third assignment of error, appellant contends that the trial court erred in failing to award him damages for the clean-up costs he incurred after the project was completed. Appellant claims that his expert witness, Frontz, testified that it was customary in the industry to take measures to clean up the cuttings/sludge created from digging a well. Thus, appellant is arguing that the decision was against the manifest weight of the evidence.
As discussed in addressing appellant's first assigned error, a reviewing court will not reverse the judgment of a lower court when it is supported by competent, credible, evidence going to all the material elements of the case. Gerijo, 70 Ohio St.3d at 226. Also, if the evidence is susceptible to more than one interpretation, a reviewing court must construe it in accord with the lower court's judgment. Id.
In the present case, the trial court expressly found that although there was a contract between both parties for the drilling of a well, and that appellant "was to perform the clean-up of the cuttings (sludge)." Even assuming, arguendo, that Frontz accurately testified that it was customary in the industry for the driller to perform clean-up operations, that does not prohibit the parties from delegating their duties by contract. Importantly, appellant does not attack the trial court's finding that his contract with appellee allocated the burden of clean-up to him. Rather, appellant merely contends that it is customary for the drilling company to perform clean-up services. Therefore, based on the facts and circumstances of this case, we cannot conclude that the trial court erred in failing to award appellant damages for clean-up costs. Thus, appellant's third assignment of error is meritless.
In regard to appellee's request for the assessment of costs at the trial level, this Court notes that he filed such motion in the trial court on November 4, 1998, and that no action on the motion was taken by the court. Appellee requested an award of costs totaling $67.50 on the basis that he prevailed on his claim. It is our position that appellant's Civ.R. 54(D) claim lies within the exclusive province of the trial court, which will not be reversed on appeal absent an abuse of discretion. Vance v.Roedersheimer (1992), 64 Ohio St.3d 552, 555; State ex rel. Reynav. Natalucci-Persichetti (1998), 83 Ohio St.3d 194, 198; Williamsonv. Ameritech Corp. (1998), 81 Ohio St.3d 342, 343-344. Moreover, appellee failed to properly raise the issue before this Court because the issue of costs was not raised in a cross appeal, as governed by App.R. 3(C). Consequently, we are without jurisdiction to address the merits of this issue.
For the foregoing reasons, appellant's assignments of error are without merit, and the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.
 ______________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] Also, it is important to note that the endorsement sequence might be some evidence of deal with Pichan; however, it is not evidence of a contract between appellant and appellee on the facts of this case.