OPINION
George Hukill appeals from a judgment of the Clark County Court of Common Pleas, which granted summary judgment in favor of the Mt. Hawley Insurance Co. ("Mt. Hawley"), Consolidated Insurance Service ("Consolidated"), and George F. Bressoud.
Hukill operated an excavation and demolition business which offered, among its services, the removal of underground storage tanks. In the fall of 1990, Hukill's insurance carrier informed him that, upon the renewal of his policy on January 1, 1991, it would no longer insure the portion of his business related to tank removal because of new environmental regulations. As a result, Hukill contacted Bressoud, an insurance agent for Consolidated, about obtaining insurance coverage for this portion of his business. Because Consolidated did not normally handle this type of policy, Bressoud worked through a broker to obtain a policy from Mt. Hawley. The premium for the policy was to be based on Hukill's sales for tank removal services, which Hukill projected would be $400,000 in the first year. Mt. Hawley agreed to insure Hukill for $1 million for an annual policy premium of $20,000, plus tax, which Hukill paid at the outset. The policy indicated that the $20,000 payment was a "Minimum and Deposit." The parties agreed that Mt. Hawley would conduct an audit of Hukill's business at the end of the year and that, if his sales for tank removal services had exceeded $400,000, he would pay an additional premium of $50 per $1,000 in gross sales. The policy was to be in effect from March 10, 1991 through March 10, 1992. An endorsement provided that Mt. Hawley would be entitled to a minimum earned premium of $5,000 or the amount indicated by the annual audit, whichever was greater, if Hukill cancelled the policy before its term.
Within the first few months of the policy, Hukill realized that he had substantially overestimated his projected sales, and he contacted Bressoud to ask whether his policy premium could be reduced to reflect a lower level of tank removal sales. After consulting with Mt. Hawley, Bressoud advised Hukill by letter as follows:
 * * * [T]he company has agreed to reduce the annual minimum earned premium from the current $20,000 to $15,000. $15,000 is the lowest premium that the company is willing to charge for an annual policy for your type of operation. In other words if your gross receipts are $300,000 or less for the policy year, you will receive upon audit [at the end of the policy year] a return premium of $5,000.
We are pleased that we were able to renegotiate this minimum premium for you and would be happy to answer any questions you might have.
Hukill did not respond to this letter, and the policy remained in force throughout its term.
Apparently, Hukill initially did not cooperate with the year-end audit of his company, whereupon Bressoud sent him a letter advising that the policy gave Mt. Hawley the legal right to conduct an audit to determine the appropriate premium. The letter further stated:
 Unfortunately we will not be able to process any return premium until the audit is completed. I believe from the indication you gave us that you would be entitled to a return premium of $5,000. We are anxious to see that you get this return as soon as possible.
As it turned out, Hukill's tank removal sales for the policy year were approximately $76,000. After Mt. Hawley completed its audit of Hukill's company, Hukill received a check for $5,000, plus tax, representing a refund on his premium. Bressoud's letter accompanying the check, titled "Audit Return Premium," stated:
 Enclosed you will find the company audit for the March 10, 1991 to March 10, 1992 policy year * * *. This audit develops a return premium of $5,250 and we are pleased to enclose our check in this amount.
 I am sorry for the confusion regarding the audit figures, however I am pleased that we were finally able to work it out for you.
Hukill negotiated this check without any endorsement that would have given notice that he was not accepting the check as full payment of any return premium owed.
On March 29, 1994, Hukill filed a complaint against Mt. Hawley, Consolidated, and Bressoud claiming that he had been entitled to a $15,000 refund on his premium because his sales had been below $100,000. Hukill maintained that the minimum premium on the policy had been $5,000 for coverage on $100,000 worth of tank removal sales and that, because his sales had not exceeded $100,000, the balance of his premium should have been refunded. Mt. Hawley, Consolidated, and Bressoud raised numerous affirmative defenses in their answers, including that Hukill's claim was barred by accord and satisfaction. They also filed motions for summary judgment on Hukill's breach of contract claim and on the issue of accord and satisfaction.
The trial court found that some of the policy terms related to the premium were ambiguous such that summary judgment was inappropriate on the breach of contract claim. The court found, however, that reasonable minds could not differ on whether an accord and satisfaction had occurred, and it granted summary judgment to Mt. Hawley, Consolidated, and Bressoud on this issue, which was dispositive of the case.
Hukill raises one assignment of error on appeal.
 THE COURT ABUSED ITS DISCRETION IN FINDING ACCORD AND SATISFACTION OF THE DEBT OWED BY DEFENDANTS TO PLAINTIFF.
Hukill disputes the trial court's findings that a bona fide dispute existed between the parties and that it was clear when Hukill negotiated the check that Mt. Hawley intended to repay no more of the disputed premium.
Accord and satisfaction is an affirmative defense to a claim for money damages by which the debt is discharged by operation of law. Allen v. R.G. Indus. Supply, Inc. (1993), 66 Ohio St.3d 229,231. An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due, and satisfaction is the performance of that contract. Id. at 231, citing Air VanLines, Inc. v. Buster (Alaska 1983), 673 P.2d 774, 777, 42 A.L.R. 4th 1, 5. "`Where there is a bona fide dispute over an unliquidated demand and the debtor tenders an amount less than the amount in dispute, upon the express condition that it shall be in full [satisfaction] of the disputed claim, the [claimant] has but one alternative; he must accept the amount tendered upon the terms of the condition * * * or he must reject it entirely, or if he has received the amount by check in a letter, he must return it.'"Id. at 231, citing Seeds Grain Hay Co. v. Conger (1910),83 Ohio St. 169, paragraph one of the syllabus. If he negotiates the check, the claimant manifests assent to the terms of a new contract which extinguishes the debtor's prior contractual obligation. Id. at 232 (citations omitted).[1]
Two safeguards are built into the doctrine of accord and satisfaction: 1) there must be a good faith dispute over the debt, and 2) the claimant must have reasonable notice that the check is intended to be in full satisfaction of the debt. Id. at 232 (citations omitted); Dawson v. Anderson (1997), 121 Ohio App.3d 9,13.
Hukill claims that the trial court should not have entered summary judgment because there was a genuine issue of material fact as to whether a bona fide dispute had existed between the parties. All of the evidence presented, however, supports the conclusion that there was a bona fide dispute over the premium. In his deposition, Hukill testified that he understood $5,000 to be the minimum premium on his policy and that he would be charged $50 per $1,000 of gross sales above $100,000. Hukill also testified that he "didn't agree" with Bressoud's letter stating that $15,000 was the lowest premium that Mt. Hawley was willing to charge to insure a tank removal operation. Hukill testified that, when he discussed renewing his policy with Bressoud, he told Bressoud that he "[had] fifteen thousand dollars coming back" and suggested that Bressoud take $10,000 of the refund to which Hukill thought he was entitled and "give [him] another years['] insurance." Bressoud's correspondence with Hukill and his deposition testimony established that Mt. Hawley had been unwilling to insure Hukill's tank removal operation for less than a $15,000 premium. Based on this evidence, the trial court properly concluded that there was no genuine issue of material fact as to whether a bona fide dispute over the premium had existed.
The second issue relevant to an accord and satisfaction was whether Hukill had had reasonable notice that the check sent to him was intended as full satisfaction of the alleged debt. Hukill claims that he did not have such notice because the check itself did not contain the language "payment in full" or "satisfaction of the debt." Hukill claims the "he had every right to think that there would probably be more money forthcoming directly from the insurance company, Mt. Hawley" because the check he received and deposited had been written by Consolidated. The trial court found that reasonable minds could not differ that "[t]he check was presented to [Hukill] after Defendant informed [Hukill] that it would pay no more on the disputed premium rebate."
As a preliminary matter, we note that the reasonable notice requirement can be proved either by extrinsic evidence or by sufficient notation on the check. Allen, 66 Ohio St.3d at 233. Thus, the absence of a notation on the check is not dispositive, as Hukill suggests, and we will consider the totality of the circumstances in determining whether there was a genuine issue as to reasonable notice.
In August 1991, Bressoud contacted Hukill in response to Hukill's inquiry about lowering his premium because of his slower-than-expected sales of tank removal services. Bressoud informed Hukill, in writing, that Mt. Hawley had "agreed to reduce the annual minimum earned premium from the current $20,000 to $15,000," that a $15,000 premium was the lowest the company was willing to accept, and that, upon an audit at the end of the policy period, Hukill could receive a premium refund of $5,000 if the audit bore out that Hukill had had sales of less than $300,000. Although, in his brief, Hukill attempts to assert that he did not receive this letter, his deposition testimony does not support this assertion. In his deposition, Hukill did not deny receiving correspondence, the insurance policy, and endorsements from Bressoud. Rather, he testified that he had routinely filed such papers at his office or had turned them over to his attorney without reading them. Furthermore, the July 29, 1992 letter with which the check was mailed labeled it an "Audit Return Premium" and stated that "the audit developed a return premium" in the amount enclosed. The insurance policy and the previous correspondence made it clear that, in Mt. Hawley's view, the audit of Hukill's sales for the year would be the determinative factor in the premium he would ultimately pay, either in establishing that the policy minimum of $15,000 applied or in establishing an additional amount owed because of sales in excess of $400,000. Bressoud's July 29, 1992 letter concluded, "I am pleased that we were finally able to work it out for you."
Based on the defendants' various representations to Hukill about the possibility of a $5,000 premium refund, but no more, and its delivery of a check in that amount, the trial court properly concluded that there was no genuine issue as to whether the reasonable notice requirement had been satisfied. A reasonable person would have understood that Mt. Hawley intended this check to fully satisfy its obligation under the contract and that no further payment would be forthcoming.
Because a bona fide dispute had existed, the reasonable notice requirement had been satisfied, and Hukill had negotiated the check without protest, the trial court did not err in concluding that Hukill's claim for additional damages was barred by accord and satisfaction.
The assignment of error is overruled.
 ____________________________ WOLFF, J.
GRADY, P.J. and BROGAN, J., concur.
[1] Although Seeds Grain was purportedly overruled in 1989 by AFC Interiors v. DiCello (1989), 46 Ohio St.3d 1, 5 and para. 2, syllabus, the supreme court cited Seeds Grain as authoritative four years later in Allen, supra. In SeedsGrain, a sharply divided court determined that a creditor could defeat the common law efficacy of the debtor's accepted and deposited "payment in full" check by accepting and depositing the check as partial payment so long as the creditor explicitly reserved all rights by endorsing the check "under protest" or with any other legend sufficient to apprise the debtor that the check is not accepted as full payment of the debt. We do not have a DiCello situation here as Hukill endorsed the check without noting that it was "under protest" or otherwise signifying that it was not accepted as full payment of any return premium owed.