This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} E. William Glause, III ("Appellant" appeals from a judgment rendered in favor of First Merit Bank, N.A. ("Appellee") by the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} Appellant was the majority shareholder and president of World Metals, Inc. and WWJ Inc. ("the corporations"). Appellant was a guarantor on several loans made to the corporations by Appellee. In addition, Appellant had a separate line of credit ("personal account") with Appellee for up to $100,000.
 {¶ 3} Ultimately the corporations were unable to meet their financial obligations. Appellee sought and obtained a cognovit judgment against the corporations and Appellant, as guarantor, in order to satisfy several defaulted commercial notes that were executed by the corporations. At the time of the judgment, the amount owed on the notes was in excess of three million dollars. The parties jointly filed and were awarded a 60(B) motion to vacate the judgment, which enabled the parties to pursue a settlement. Subsequently, Appellant was able to obtain new financing with a third party loan company to satisfy the debt to Appellee. In December 1999, the corporations and Appellee reached an agreement wherein Appellee agreed to accept 2.9 million dollars to release the corporations and Appellant from any and all claims against the corporations. The parties accomplished a transfer of the funds from the corporations to Appellee on January 4, 2000.
 {¶ 4} At the time of the settlement, an outstanding balance of approximately $86,000 on Appellant's personal account was not in default, and there was no legal action pending against it. However, Appellant believed that the personal account was included in the settlement agreement and stopped making payments to satisfy the personal account. Appellee filed suit on March 8, 2000, accelerating the debt on the personal account and asking for the total amount owed, plus interest at the contract rate and costs. The parties went to trial on the issue of accord and satisfaction, with judgment being rendered for Appellee. Appellant timely appealed and raises one assignment of error.
 II. Assignment of Error {¶ 5} "THE DECISION OF THE TRIAL COURT THAT THE $100,000 CREDIT LINE WAS NOT INCLUDED WITHIN THE ACCORD AND SATISFACTION REACHED BETWEEN APPELLANT AND APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} Appellant argues the evidence shows that the personal account was included in the settlement agreement and to hold otherwise is against the manifest weight of the evidence. We disagree.
 {¶ 7} When an appellant challenges a judgment in a civil case as against the manifest weight of the evidence, an appellate court's standard of review is the same as that in a criminal context. Frederickv. Born (Aug. 21, 1996), 9th Dist. No. 95CA006286, at 14. In determining whether a conviction is against the manifest weight of the evidence, this Court must:
 {¶ 8} "[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 9} An appellate court that overturns a trial court's judgment as against the manifest weight of the evidence acts, in effect, as a "thirteenth juror," setting aside the resolution of testimony and evidence as found by the trier of fact. State v. Thompkins (1997),78 Ohio St.3d 380, 387. This action is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant.Otten, 33 Ohio App.3d at 340. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at 14, appeal not allowed (2000), 88 Ohio St.3d 1482. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 10} To establish the defense of accord and satisfaction, Appellant must show that: (1) the parties went through a process of offer and acceptance — an accord; (2) the accord must have been completed — a satisfaction; and (3) the accord and satisfaction must have been supported by consideration. Allen v. R.G. Indus. Supply (1993),66 Ohio St.3d 229, paragraph one of the syllabus. Further, Appellant must establish that there was a good faith dispute regarding the debt, and the Appellee must have reasonable notice that the payment is intended to be in full satisfaction of the debt. Id. at paragraph two of the syllabus.
 {¶ 11} The issue presented is limited to whether the parties intended the settlement agreement to include the outstanding debt on the personal account. Appellant bases his argument upon a telephone conversation he held with Bill Reed, an agent of Appellee. Appellant states that in the telephone conversation, Appellant related to Mr. Reed that Appellant had received a loan commitment from a third party, and that a portion of the money received from the loan commitment would go to satisfy "the lending relationship" with Appellee. Appellant points out that Mr. Reed testified at trial that such was his understanding of the intention behind the loan commitment. Appellant maintains that the telephone conversation was "the ultimate settlement agreement" between the parties, and "[t]here is no dispute that it was intended to resolve the lending relationship with [Appellee]."
 {¶ 12} The evidence at trial consisted of several pertinent documents and the testimony of four witnesses.
 {¶ 13} Mr. Reed, senior vice president and senior credit officer for Appellee, testified that while he had engaged in several phone conversations with Appellant in December of 1999, none of the conversations involved the personal account. Mr. Reed stated that the negotiated settlement with Appellant pertained only to "the commercial debt," and that none of Appellee's employees were attempting to collect on the personal account because it was not in default at the time of the negotiations. Mr. Reed testified that he had no knowledge whether or not the personal account was offered as a package deal with the other commercial accounts, but stated that Appellee does offer those types of packages to principals of business. Mr. Reed further stated that he remembered a telephone conversation he conducted with Appellant occurring on December 30, 1999, during which Appellant indicated that he had obtained a loan commitment from a third party lender, a portion of which could be used to satisfy "the lending relationship" with Appellee. Mr. Reed concluded his testimony by confirming that the commercial accounts that were the subject of the cognovit judgment were executed in 1995, while the personal account note was executed in 1997.
 {¶ 14} Mark Bernlohr, the attorney who represented Appellant at the negotiations with Appellee, testified that the goal of the negotiations was to dispel the corporations' debt represented in the complaint leading to the cognovit judgment. Mr. Bernlohr also stated that it was his understanding at the time that the 2.9 million dollars was to go to settle the debts of the corporations solely and that the settlement did not include the personal account balance. According to Mr. Bernlohr, the terms of the agreement were never memorialized in any written document.
 {¶ 15} Robert Stefancin, the attorney who represented Appellee in the negotiations, testified that Appellee agreed to release the cognovit judgment to allow Appellant to secure new financing to satisfy the debt. Mr. Stefancin stated that after the parties negotiated the 2.9 million-dollar settlement, the third party lender required confirmation that Appellee would dismiss the corporations' debt as paid. Mr. Stefancin testified that to satisfy that requirement, he mailed and faxed two letters to Mr. Bernlohr on January 3, 2000. Mr. Stefancin stated that the first letter, admitted into evidence as Plaintiff's Exhibit #5, referenced the corporations' debt to Appellee as the subject matter of the negotiations, and there was no reference in the letter to the personal account balance. The letter itself states that in exchange for the 2.9 million dollars, Appellee would "release any and all liens that it holds against World Metals, Inc. and WWJ, Inc. and will mark the notes from WWJ and World Metals, Inc. satisfied. This will effect a full and mutual release as between our clients."
 {¶ 16} After sending the first letter, Mr. Stefancin testified that he received a telephone call from Mr. Bernlohr regarding concerns from Appellant; Appellant wished to ascertain if the settlement dismissed only the corporations' debt or if it included the personal account. Mr. Stefancin stated that he responded that the settlement was only for the corporations' debt, and it did not include the personal account. Mr. Stefancin testified that he followed up on this conversation with another letter so stating. The second letter, admitted into evidence as Plaintiff's Exhibit 6, states in part, "In addition, this letter is to confirm that [Appellee] is NOT releasing [Appellant] from any obligation other than the guarantees mentioned above." (Emphasis sic.)
 {¶ 17} Finally, Appellant testified that in addition to the corporations' loans, Appellee offered him a "discretionary commercial line" of credit in an unsecured note to Appellant. Appellant maintains that this line of credit was contemporaneous with the corporations' loans and offered as a package. Appellant testified that at the time of the negotiation settlements, he telephoned Mr. Reed several times on December 30, 1999 attempting to finalize a settlement. Appellant states that finally Appellee agreed to take 2.9 million dollars in satisfaction of the debt, and Appellant believed at the time that the agreement included the personal account. Appellant memorialized his understanding of the agreement on a note to himself dated December 30, 1999, which states in pertinent part, "[Appellee] agrees through Bill Reed to take 2,900,000.00 as payment in full of all debts." Further, Appellant testified that none of the loans were formally cancelled through return of the loan documents marked paid in full. Appellant stated that he bore no ill will to his attorney, Mr. Bernlohr, regarding the misunderstanding of the settlement agreement.
 {¶ 18} The trial court found that Appellee had "met its burden of proof by a preponderance of the evidence that [Appellant's] personal debt to it was not included in the settlement[.]" The trial court proffered as reasons for its decision that: (1) the companies' loans were executed in 1995, whereas the personal account was executed in 1997, indicating that the parties considered them to be separate and distinct; (2) a letter from Appellant to Mr. Bernlohr dated December 13, 1999, discussed the specific sum due from the corporations and did not mention the personal account; (3) the complaint for the cognovit judgment named corporations as defendants, and only named Appellant as a guarantor, and the complaint did not ask for judgment against the personal account; (4) the cognovit judgment included only those loans from the corporations, and not the personal account; (5) Exhibit A, a letter from Appellant, came after the facts of settlement and payment and therefore was not dispositive as to the issues; (6) Attorney Stefancin's testimony was credible and supported by the physical evidence; (7) Attorney Bernlohr's testimony was credible and did not support Appellant's position; (8) the two letters, Exhibits 5 and 6, faxed to Mr. Bernlohr, support Appellee's position that the personal account was not being discharged by the settlement; (9) Appellant's note to himself does not definitively demonstrate that the personal account was included in the settlement; and (10) Appellant's admitted lack of anger toward Mr. Bernlohr belies any understanding that the personal account was included in the settlement.
 {¶ 19} After reviewing the evidence, we conclude that the court did not create a miscarriage of justice by determining that the settlement agreement between the parties did not include the funds owed through the personal account. The trial court's judgment in favor of Appellee was not against the manifest weight of the evidence. Therefore, Appellant's assignment of error is overruled.
 III. {¶ 20} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
SLABY, P.J., CARR, J., CONCUR.