DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Wood County Court of Common Pleas. There, the court awarded summary judgment in favor of an insurer in a "bad faith" claim. Because we conclude the insureds failed to meet their burden to establish their claim, we affirm.
Appellants, Piedmont Corporation[1] and Douglas R. Valentine, trustee of the Douglas R. Valentine living trust, own a Bowling Green Apartment complex which was insured by appellee, Midwestern Indemnity Company. On December 29, 1995, fire damaged appellants' apartments. Appellants notified appellee of their loss.
On March 14, 1996, appellee paid appellants $10,820 as a partial payment for the business interruption portion of appellants' insurance coverage under appellee's policy. On March 28, 1996, appellants wrote appellee, claiming approximately $300,000 in damages.
On April 10, 1996, appellee's chief claims specialist responded to appellants' claim. The insurer characterized appellants' claim as "excessive." Attached to this letter was a summary of the insurer's analysis of loss, which estimated total damages to be $130,467.67. Noting the discrepancy between the amount of appellants' claim and the amount the insurer was willing to approve, the claims specialist invoked a clause in the insurance contract which provided that, in the event the insurer and insured disagree as to the amount of loss, an independent appraisal would determine the final loss figures.[2] The April 10 letter closed with a paragraph in which the insurer reserved its rights under the policy.
When appellants did not respond to the claims specialist's first letter, appellee sent a second letter on May 15. Appellee again advised appellants of the loss discrepancy, invoked the appraisal clause and reserved rights. Once more, appellants did not reply. On June 5, 1996, the claims specialist wrote a third letter. Included with this correspondence was a check for $119,647.67 ($130,767.67 less the $10,800 already paid) bearing the notation that this amount was "in payment of undisputed fire damage claims." The cover letter explained:
 "We are tendering an amount, herewith, consistent with the assessment of Piedmont's losses. If this loss assessment is not agreeable, we ask that you appoint and identify your appraiser and that the appraisers proceed immediately on the arrangements for the appraisal in accordance with the policy. If you have questions, please contact me as soon as possible."
The letter concluded with the following reservation of rights which was also contained in the prior correspondence:
 "Please be advised that this letter is not to be construed as a waiver of any of the terms and conditions of the policy and all rights and defenses thereunder are expressly reserved."
Appellants did not negotiate the June 5 check, nor did they appoint an appraiser. Instead they instituted the suit which underlies this appeal, accusing appellee of breach of contract and bad faith. Appellants sought a determination and declaration of the amount due under the insurance policy and punitive damages.
Appellants resisted submitting the matter for appraisal until ordered to do so by the trial court. Eventually, an appraisal umpire reported to the court a damage estimate of $200,000.46. Appellee tendered to appellants the difference between the appraisal and the amount already paid, then moved for summary judgment, arguing that the terms of the insurance contract had been satisfied and appellants had failed to present evidence creating a question of fact as to "bad faith." Over appellants' objection, the trial court granted appellee's motion for summary judgment. This appeal followed with appellants setting forth the following two assignments of error:
"ASSIGNMENT OF ERROR I:
 The trial court's granting of the Appellee Midwestern's Motion to Dismiss Appellants' Amended/Supplement Complaint on the basis that the Appellee Midwestern did not act in bad faith toward the Appellants was contrary to the undisputed facts before the Court and the applicable law.
"ASSIGNMENT OF ERROR II:
 The trial court failed to address and decide all issues presented by Appellee Midwestern's Motion to Dismiss and more specifically such issue as was enumerated by that court with agreement of counsel."
On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated
 "* * *(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64, 67, Civ.R. 56(E).
When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988),38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248.
 I.
The pivotal issue in this matter is the June 5, 1996 check. Appellants insist that the check and the language in the accompanying letter from appellee to appellants forces an election. According to appellants, appellee clearly offered them the choice of accepting the insurer's estimate of loss or submit to appraisal. Consequently, appellants reason that had they negotiated the check, that would have completed an accord and satisfaction of their claims.
Without the money represented by the check, appellants contend that they were in no position to effect repairs to their apartment complex. Moreover, even if they had been able to repair the building, appellants interpret the language reserving rights under the contract contained in appellee's letters as a prohibition from performing repairs. This, according to appellants, resulted in the building being unusable for forty-four months. At the least, appellants assert, appellee should be responsible to pay for their business interruption for the whole of this period. Additionally, appellee's intent to force the election was a calculated effort to evade or delay payment of appellants' claim, constituting bad faith and exposing appellee to punitive damages.
Appellee rejects appellants' assertions as a product of their own "paranoia." Appellee maintains that there was nothing conditional about the June 5 check, the revocation of rights paragraph in their correspondence should not have been construed as freezing repairs, and any delay in the processing of appellants' claim was a product of appellants' refusal to participate in the contractually mandated appraisal mechanism.
An insurer has a duty of good faith towards its insured implied by law. Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, paragraph one of the syllabus,
 "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, paragraph one of the syllabus. (Citations omitted.)
Consequently, to prevail against a motion for summary judgment in a bad faith claim, an insured must put forth evidence that the claim was denied or unreasonably delayed and the insurer had no justification for such denial or delay. Tokles Son v. Midwestern Indem. Co. (1992),65 Ohio St.3d 621, 630.
Antecedent to any bad faith claim, there must be a denial or unreasonable delay in providing coverage. The "undisputed" notation on the face of the June 5 check simply does not unambiguously constitute a statement that the check was submitted in accord or full satisfaction of appellants' claim. See Allen v. R.G. Indus. Supply (1993),66 Ohio St.3d 229, 233. Moreover, the language contained in the cover letter does not clarify the notation. In our view, the notation and the language of the letter reasonably articulates the insurer's position that the check represented its assessment of appellants' loss, but that if appellants disagreed they could participate in the contractually mandated appraisal to obtain more. Consequently, we must hold that appellants failed to come forward with evidence that appellee denied or unreasonably delayed appellants' claim.
Accordingly, appellants' first assignment of error is not well-taken.
 II.
In their second assignment of error, appellants complain that the trial court failed to address their claim for additional business interruption compensation for the period the case was in litigation.
As appellee properly points out, the trial court's award of summary judgment was for all claims before the court and the court need not specifically address individual issues.
We should note, however, that the additional compensation appellants requested was predicated on the premise that the June 5 check was conditional. As we have determined, such was not the case. Therefore, the delay in effecting repairs was the result of appellants' own failure to seek clarification from the insurer or to timely submit to the contractually mandated appraisal. Since the excess delay was the result of appellants' own acts, the trial court did not err in denying their attempts to exact the costs of the delay upon appellee.
Accordingly, appellants' second assignment of error is not well-taken.
On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed. Costs to appellants.
James R. Sherck, J., Mark L. Pietrykowski, J., George M. Glasser, J., JUDGES CONCUR.
 ____________________________ JUDGE
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Which is wholly owned by Douglas Valentine.
[2] Under the terms of the insurance agreement, each party is to appoint an independent appraiser. The two appraisers then choose an "umpire." The appraisers are directed to state separately the amount of loss. In the event of a discrepancy in these estimates, both appraisers submit their estimates to the umpire. An agreement between any two of the three becomes binding.