[Cite as *M & T Elec. Co., Inc. v. LLLJ, Ltd.*, 2014-Ohio-5678.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99479

---

### M & T ELECTRIC CO., INC., ET AL.

PLAINTIFFS-APPELLANTS

vs.

### LLLJ, LTD., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-08-673-237

**BEFORE:** Kilbane, J., E.A. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 24, 2014

**ATTORNEY FOR APPELLANT**

Brent L. English
Law Offices of Brent L. English
The 820 Building, 9th Floor
820 Superior Avenue, West
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES**

**For LLLJ, LTD., ET AL.**

William T. Schill
William T. Schill, Esq. L.L.C.
P.O. Box 16156
Rocky River, Ohio 44116

Robert J. Fedor
Robert J. Fedor, Esq., L.L.C.
23550 Center Ridge Road
Suite 107
Westlake, Ohio 44145

**For Cuyahoga County Treasurer**

Timothy J. McGinty
Cuyahoga County Prosecutor
Adam D. Jutte
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**For Home Savings Loan of Youngstown**

Thomas M. Gacse
275 Federal Plaza, West
Youngstown, Ohio 44053


**Also Listed:**

Bowman Products Co.
A Division of Assoc. Spring Group
C/O Barnes Group, Inc.

850 East 72nd Street
Cleveland, Ohio 44103

Clorox Chemical Company, Clorox
1221 Broadway
Oakland, California 94612-1888

Jane and Arthur Ellison, Ltd.
850 East 72nd Street
Cleveland, Ohio 44103-1007

Kromex Corporation
C/O James Fraser, Statutory Agent
13345 Foxmoor Trail
Chesterland, Ohio 44026-3458

MARY EILEEN KILBANE, J.:

{¶1} Plaintiff-appellant, M & T Electric Co., Inc., d.b.a. Harstone Electrical Services ("Harstone"), appeals from the decision of the trial court granting judgment awarded in favor of defendants-appellees LLLJ, Ltd. ("LLLJ") and Libby Construction Co. ("Libby"), on Harstone's claims for breach of contract, foreclosure on a mechanic's lien, and unjust enrichment. For the reasons set forth below, we affirm.

{¶2} On December 21, 2006, property owner, LLLJ, recorded a notice of commencement of improvement, pursuant to R.C. 1311.04,[1] prior to accepting proposals for work on a single-story commercial warehouse it owns on property located at 940 East 72nd Street, in Cleveland. On October 23, 2007, Harstone submitted a proposal to perform electrical work for the project, including labor and materials, totaling $30,575. In relevant part, Harstone's proposal indicated that the bills would be sent to Libby, the general contractor for the project, stating:

> Any alteration or deviation from the above specifications involving extra cost of material or labor will only be executed upon written orders for same, and will become an extra charge over the sum mentioned in this contract. All agreements must be made in writing.

{¶3} Libby accepted Harstone's proposal on October 24, 2007.

{¶4} On November 20, 2007, Harstone submitted an invoice to Libby in the amount of $28,129.

---

[1] R.C. 1311.04 provides, in relevant part, that prior to the performance of any labor or work or the furnishing of any materials for an improvement on real property that may give rise to a mechanic's lien, the owner, part owner, or lessee who contracts for the labor, work, or materials shall record with the county recorder a notice, in affidavit form, the name, address, and capacity of the owner, part owner, or lessee of the real property contracting for the improvement, and other information.

**{¶5}** Thereafter, Harstone completed additional electrical work on the building. On December 26, 2007, Harstone tendered an invoice to Libby in the amount of $51,513. This total included the original invoice amount of $28,129, plus $23,384 for the extra labor and materials. Harstone left the jobsite on January 29, 2008.

**{¶6}** On February 25, 2008, Thomas Johnstone ("Johnstone"), one of Harstone's two principals, attended a meeting at the project site with Liberatore Noce ("Noce"), managing member of LLLJ. Johnstone received a LLLJ check in the amount of $28,129 with "paid in full" written in the memo line of the check. At this same meeting, Johnstone executed a "Waiver of Lien" before a notary, which states:

> In consideration of the sum of $1.00 or the sum of 28129 DOLS 00CTS, and other valuable consideration in hand paid, the receipt whereof is hereby acknowledged, the undersigned does hereby waive, release and relinquish any and all liens or claims, or right to lien or claim, for labor or materials, or both, furnished to date hereof, for the premises known and described as Street and Number 940-E 72nd St. City CLEVELAND County CUYAHOGA State OHIO.

**{¶7}** On March 28, 2008, Harstone filed an affidavit for a Mechanic's Lien for the unpaid portion of the second invoice, $23,384 plus interest against the East 72nd Street property.

**{¶8}** On October 14, 2008, Harstone filed a complaint against LLLJ, Libby, the Home Savings and Loan Co. ("Home Savings") and various other defendants, to foreclose upon the mechanic's lien, alleging breach of contract and unjust enrichment. LLLJ denied liability, and set forth counterclaims for declaratory judgment (to declare the lien invalid) and slander of title. In its answer denying liability, LLLJ maintained that the claim for additional work was without

merit because the parties' contract expressly requires that any change orders be made in writing and that Harstone's mechanic's lien was defective.

{¶9} On February 9, 2010, LLLJ moved for summary judgment. As a key basis for this motion, LLLJ asserted that the waiver of lien barred Harstone's recovery. In opposition, Harstone argued that LLLJ failed to provide the trial court with evidentiary materials to support the motion for summary judgment, and that there had been no meeting of the minds to establish an accord and satisfaction. The trial court denied the motion for summary judgment, and the matter proceeded to trial before a magistrate on April 4, 2011.

{¶10} At trial, Noce testified on cross-examination that the building was constructed in an area consisting of two parcels of property. He testified that Harstone worked on the project and submitted an invoice on November 20, 2007 in the amount of $28,129. He later received an invoice dated December 26, 2007, for an additional $23,384.

{¶11} With regard to the issue of whether the second invoice was received after the first invoice had already been paid, Noce first testified both that "[h]e give me the — he give me the second invoice after I pay this," then stated, "I never paid the first one until I see what's going on."

{¶12} Noce acknowledged that the initial invoice for $28,129 was less than the sum quoted in the proposal ($30,575), and he also acknowledged that he had given his oral approval for Harstone to complete some additional work that was completed when he received the first invoice. According to Noce, Johnstone informed him that the additional work would "cost me 3 to $4,000[.]" Noce stated that no other employee had authority to approve additional changes, and no written change orders were ever presented to him.

{¶13} Noce stated that when he received the December 26, 2007 invoice, no labor records or material receipts were provided in support of the claim for payment. At the February 25, 2008 meeting, Noce became angry over the invoices, Johnstone asked Noce to "give me an offer" for the cost of the additional work. Noce then gave Johnstone a check for $28,129, and wrote in the memo line of the check "paid in full."

{¶14} Johnstone testified that the November 20, 2007 invoice was a progress payment and not a final bill. He acknowledged that it did not contain an itemization for labor and materials. After submitting the initial invoice, Harstone continued to work on the project. Thereafter, on December 26, 2007, and before the February 25, 2008 payment, Johnstone submitted the second invoice for the additional work. This included additional emergency lights, installing additional power to the building, installing baseboard heating, and garage openers. Harstone maintained that he spoke to Troy Satterfield ("Satterfield") from Libby about each change, and Satterfield in turn spoke with Noce who approved the additional work. The last day of work on the project was January 29, 2008, following an inspection from the city of Cleveland. Johnstone also admitted that several of the construction sheets for the hours worked by his employees identify a date worked in November 2007, and then a strike out and handwritten notation changing the date to a date in December 2007.

{¶15} With regard to the check he received on February 25, 2008, and the waiver of lien that he signed, Johnstone testified that his understanding was that these documents signified only that there had been progress payments, and that he could still receive additional money on the project.

{¶16} Harstone electrician Mark Montali ("Montali") testified that he was one of three electricians who worked on the project. Change orders were cleared through Satterfield and

Johnstone. Montali testified that he added two emergency exit lights on January 29, 2008, his last date of working on that job.

{¶17} Satterfield testified that he made Noce aware of the proposed changes, and that Noce approved them. According to Satterfield, Noce never disputed the additional work. Satterfield acknowledged that he and Noce subsequently had a disagreement concerning his purchase of tools.

{¶18} Attorney James Shorey, counsel for Harstone, testified that he researched the permanent parcel number and legal description before he prepared the mechanic's lien. He acknowledged that he listed one permanent parcel number, and he did not indicate that the property consists of two consolidated parcels.

{¶19} The magistrate issued a nine-page decision that provided in relevant part as follows:

> The Magistrate finds that the evidence is undisputed that Plaintiff Harstone submitted two invoices, on November 20, 2007 and the other on December 26, 2007. Subsequently, after all electrical work had been completed, on February 25, 2008, Thomas Johnstone of Harstone accepted check no. 1124 in the amount of $28,129.00 with the written notation in the memo section "940-72 PAID IN FULL." Again, this check was accepted after all work had been completed on the original project and after all of the unwritten change order work had been completed. Moreover, both invoices had been submitted to Defendant LLLJ at the time of the acceptance of check no. 1124. There is no question that all of the electrical work was performed prior to the acceptance of check no. 1124.
>
> The law in Ohio is clear. If a defendant proves that a person in good faith tendered an instrument to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument, the claim is discharged if the defendant proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim. O.R.C. 1303.[40]; *BNI Telecommunications, Inc. v. Cybetrnet Communications*, Inc., (1997), 118 Ohio App.3d 851 (Ohio App. 8th Dist.).

The undisputed facts of this case indicate that defendant LLLJ tendered check no. 1124 to Harstone, that the claim was subject to dispute based on the fact that there was a second invoice for additional charges outstanding at the time of the acceptance of the check. Additionally, the check was cashed with the conspicuous statement of the partial address and paid in full written on the front of the check in the memo section. It is abundantly clear that the check was intended to be payment in full satisfaction of the disputed debt. Moreover, Harstone negotiated the check without a reservation of rights and without complying with the protections afforded a creditor by O.R.C. 1303.[40]. The Magistrate finds that, as a matter of law, the claim was wholly discharged.

Moreover, Harstone signed a Waiver of Lien at the time of the acceptance of the check. The Waiver of Lien clearly stated that Harstone waived, released and relinquished any and all liens or claims, or the right to the lien or claim, for labor or materials, or both, furnished to date hereof. The "date hereof" was February 25, 2008. According to Plaintiff's employee's testimony, the last work performed was prior to February 25, 2008[.] A mechanic's lien holder is estopped from asserting his rights under the lien by signing a waiver of lien and obtaining consideration in the form of a partial payment. *Brown Graves-Vincent Co. v. Deutchman*, (1924) 1924 WL 2798 (Ohio App. 9th Dist.).

Harstone cannot prevail on its unjust enrichment claim as an express contract existed with LLLJ. * * * *Univ. Hosp. of Cleveland, Inc. v. Lynch,* 2002-Ohio-3748, 96 Ohio St.3d 118, 130; *F & L Center Co., Ltd. v. H. Goodman, Inc*. 2004-Ohio-5856.

{¶20} Harstone filed objections to the magistrate's decision and maintained that since the second invoice was not discussed when the first invoice was paid on February 25, 2008, there was simply a partial payment and not an accord and satisfaction of a disputed debt. Harstone also argued that Johnstone did not know when he executed the waiver of lien on February 25, 2008, that he was waiving his right to payment on the second invoice.

{¶21} The trial court overruled the objections and adopted the magistrate's decision. Harstone now appeals, assigning two errors for our review:

Assignment of Error One

The trial court erred in overruling Harstone's objections to the Magistrate's Decision and in concluding that LLLJ proved accord and satisfaction.

Assignment of Error Two

Both the trial court and magistrate erred in concluding that Harstone waived its mechanic's lien claim against LLLJ.

**{¶22}** In the first assignment of error, Harstone asserts that the requirements of an accord and satisfaction have not been met because there was no bona fide dispute about the debt at the time of the receipt of the February 25, 2008 payment. According to Harstone, the testimony of Noce indicated that the payment of $28,129 was simply a "partial payment" made before the additional $23,384 in new charges. Similarly, in the second assignment of error, Harstone asserts that Johnstone executed the lien waiver only in connection with the payment from the first invoice, and he did not release all claims and did not release claims related to the second invoice.

**{¶23}** In a civil case, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence" and must be affirmed by a reviewing court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

> A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

Accord and Satisfaction

**{¶24}** If a party against whom a claim for money damages is made can prove the affirmative defense of accord and satisfaction, that party's debt is discharged as a matter of law. *Allen v. R.G. Indus. Supply*, 66 Ohio St.3d 229, 231, 1993-Ohio-43, 611 N.E.2d 794. "An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in

exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." *Id*. at 231.

{¶25} R.C. 1303.40, Accord and Satisfaction by Use of Instrument provides:

> If a person against whom a claim is asserted proves that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument, all of the following apply:
>
> (A) Unless division (B) of this section applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

{¶26} There are two safeguards built into the doctrine to protect creditors. First, there must exist a good-faith dispute about the debt. Second, the creditor must be reasonably notified that the debtor intends the check to be in full satisfaction of the debt. *Lightbody v. Rust*, 8th Dist. Cuyahoga No. 80927, 2003-Ohio-3937, ¶ 13. The issue of whether there is a bona fide dispute about the debt is ordinarily a question of fact to be resolved by the trier of fact. *Id*. at ¶10. *See also Parma v. Wielicki*, 8th Dist. Cuyahoga No. 96869, 2011-Ohio-6291, ¶ 11.

{¶27} In this matter, Harstone insists that there is no accord and satisfaction because Noce testified that he did not know about the second invoice at the time he paid the first invoice. A review of the testimony indicates that Noce testified as follows:

> He give me the — he give me the second invoice after I pay this. This I know.
>
> * * *
>
> He was giving me the extra, I never paid the first one until I see what's going on. That's correct for me.

{¶28} In addition, Johnstone testified that any claim that Noce "never saw that invoice until after he paid the first progress payment" "is not true." (Tr. 114.) The chronology of the documents also indicates that the second invoice was issued before LLLJ made payment. The evidence demonstrates that Harstone's first invoice was submitted on November 20, 2007, and the other on December 26, 2007. No work was performed after January 29, 2008. Thereafter, on February 25, 2008, after all electrical work had been completed, Johnstone accepted check No. 1124 in the amount of $28,129, with the written notation in the memo section "940-72 PAID IN FULL." Since this check was dated and issued after both invoices had been presented, and all work had been completed on the original project, we find competent, credible evidence to support the lower court's finding of an accord and satisfaction.

{¶29} The first assignment of error lacks merit.

Waiver of Mechanic's Lien

{¶30} In the second assignment of error, Harstone asserts that the check he received from LLLJ was only for payment of the first invoice, and there was no consideration for the release of future mechanic's liens, including the lien that resulted from nonpayment of the second invoice.

{¶31} In general, common words appearing in a written instrument will be given their ordinary meaning unless a manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus; *Progressive Bros. Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.*, 8th Dist. Cuyahoga No. 69315, 1996 Ohio App. LEXIS 1418 (Apr. 4, 1996). Further, a clear and unambiguous provision in a contract whereby a contractor waives his rights to a mechanic's lien or agrees not to file a lien is valid and binding and will preclude the contractor from asserting a right to a lien. *Steveco, Inc. v. C & G Invest.*

*Assoc.*, 10th Dist. Franklin No. 77AP-101, 1977 Ohio App. LEXIS 7341 (Aug. 4, 1977) (a mechanic's lien, once waived, cannot be revived by the owner's failure to abide by other independent covenants in the contract.)

**{¶32}** In this case, although plaintiff insists that the check he received from LLLJ was only for payment of the first invoice, and there was no consideration for the release of future mechanic's liens from the nonpayment of the second invoice, this argument fails for two reasons. First, as discussed in the first assignment of error, the trial court did not err in finding that the check covered payment for the entire debt, and not just for the first invoice. Accordingly, at the time that the mechanic's lien waiver was signed, there was consideration provided for the release of the mechanic's liens with respect to both the first invoice and the second invoice.

**{¶33}** Secondly, the plain language of the mechanic's lien waiver contradicts the plaintiff's argument:

> In consideration of the sum of $1.00 or the sum of 28129 DOLS 00CTS, and other valuable consideration in hand paid, the receipt whereof is hereby acknowledged, the undersigned does hereby waive, release and relinquish any and all liens or claims, or right to lien or claim, for labor or materials, or both, *furnished to date hereof*, for the premises known and described as Street and Number 940-E 72nd St. City CLEVELAND County CUYAHOGA State OHIO. (Emphasis added.)

**{¶34}** The trial court found that the work was completed on January 29, 2008. The mechanic's lien waiver was signed on February 25, 2008. Because the work, labor, and materials related to both invoices had been supplied by the time the mechanic's lien waiver had been signed, the plaintiff had waived any lien or claim for work performed prior to February 25, 2008.

**{¶35}** In accordance with the foregoing, the second assignment of error is without merit.

**{¶36}** Judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, P.J., and
PATRICIA A. BLACKMON, J., CONCUR