[Cite as *Hazelwood Assn., Inc. v. Helfrich*, 2025-Ohio-2968.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| HAZELWOOD ASSOCIATION, INC., | : | Case No. 24 CA 00095 |
| | : | |
| Plaintiff - Appellee | : | Opinion & Judgment Entry |
| | : | |
| -vs- | : | Appeal from the Licking County |
| | : | Municipal Court, |
| JAMES HELFRICH, | : | Case No. 08 CVI 02753 |
| | : | |
| Defendant - Appellant | : | Judgment: Affirmed |

Date of Judgment:  August 19, 2025

Before: William B. Hoffman, Andrew J. King, and David M. Gormley, Judges

Appearances: David A. Dye for Plaintiff-Appellee; James C. Helfrich for Defendant-Appellant

*Gormley, J.*

{¶1}    Appellant James Helfrich is challenging the trial court's decision to revive a dormant judgment against him.  He raises several arguments here, asserting that the trial court failed to consider his defenses and evidence, considered some evidence that should not have been considered, and issued a judgment that was against the manifest weight of the evidence.  For the reasons that follow, we affirm the judgment of the trial court reviving the dormant judgment.

**The Key Facts**

{¶2}    The parties' lengthy financial dispute began 17 years ago when plaintiff Hazelwood Association — a homeowners' association for a residential subdivision in Pataskala, Ohio — sued Helfrich to collect unpaid dues, attorney's fees, and court costs.

Hazelwood won that suit, and the trial court issued a judgment against Helfrich in 2009 for $778.38 plus interest. When Helfrich appealed, this court affirmed. *See Hazelwood Assn., Inc. v. Helfrich*, 2010-Ohio-2871 (5th Dist.).

{¶3} Hazelwood then tried to collect the judgment by attaching liens to Helfrich's property and by seeking to garnish from local banks any available funds belonging to Helfrich. The last of those garnishment actions — all of which appear to have been unsuccessful — was filed by Hazelwood in 2014. Five years after that, the 2009 judgment — in accordance with R.C. 2329.07(B) — became dormant.

{¶4} Next, in 2020, Hazelwood filed a new lawsuit against Helfrich to recover unpaid homeowners' association dues and other fees. In that new complaint, Hazelwood sought the unpaid dormant judgment from 2009 as well as additional dues and fees that Hazelwood claimed were owed by Helfrich. That case ping-ponged between two different trial courts and this court, with the upshot being that the case was ultimately dismissed because of what appear to have been some missteps on the part of Hazelwood. *See Hazelwood Assn., Inc. v. Helfrich*, 2022-Ohio-174 (5th Dist.).

{¶5} Then, in 2024, Hazelwood asked the trial court in this case to revive the dormant 2009 judgment. The trial court granted that request, and Helfrich now appeals, raising thirteen assignments of error.

## The Dismissal of the 2020 Action Does Not Bar Revival of the 2009 Judgment

{¶6} We begin by addressing Helfrich's argument that the dismissal of the 2020 action precludes Hazelwood from reviving the judgment that it obtained in 2009. Helfrich contends that because Hazelwood included the amount owed on the 2009 judgment in

the complaint that it filed in 2020, the 2009 judgment was dismissed when the 2020 action was dismissed.

{¶7} The doctrine of res judicata or claim preclusion bars a party from relitigating a claim that has already been decided on the merits in a final and appealable order. *AJZ's Hauling, L.L.C. v. TruNorth Warranty Programs of North America*, 2023-Ohio-3097, ¶ 15. "Res judicata ensures the finality of decisions." *Id*. Both parties in this case agree that Hazelwood obtained a judgment in its favor in the 2009 case, and the parties agree, too, that the order granting that judgment was final and appealable. Indeed, this court affirmed that judgment in 2010.

{¶8} Any attempt — by either party — to relitigate the claim that was resolved in the 2009 case is barred by the doctrine of claim preclusion. *See O'Nesti v. DeBartolo Realty Corp.,* 2007-Ohio-1102, ¶ 6 ("Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action"); *In re Hufford*, 460 B.R. 172, 179 (Bankr.N.D.Ohio 2011), quoting 46 Am.Jur.2d, Judgments, § 451 (now § 430 in the May 2025 update) ("when a valid and final personal judgment is rendered in favor of the plaintiff, . . . the plaintiff cannot maintain a subsequent action on any part of the original claim, because the doctrine of merger operates to extinguish a cause of action on which a judgment is based and bars a subsequent action for the same cause").

{¶9} When Hazelwood filed the 2020 lawsuit, it sought for the second time some amounts that Helfrich had been ordered to pay to Hazelwood under the 2009 judgment. Had a trial court reached the merits of Hazelwood's 2020 complaint, that court would have — under the doctrine of merger that is embodied in the concept of claim preclusion —

dismissed the parts of Hazelwood's 2020 claim for relief that had been litigated and decided in the 2009 judgment.  *See Whitehead v. Gen. Tel. Co.*, 20 Ohio St.2d 108, 112 (1969) ("If the plaintiff in the prior action is successful, . . . that . . . plaintiff cannot recover again on the same cause of action").

{¶10}  The doctrine of claim preclusion barred Hazelwood from trying to win a new judgment in 2020 on the same issue addressed by the first judgment in 2009, but that doctrine in no way limits Hazelwood's efforts to collect on that earlier judgment. Relitigation of the same issue is barred; collection of the original judgment is not. Hazelwood's fruitless filing of a new lawsuit in 2020 to relitigate the same claim on which Hazelwood had already won a judgment in 2009 does not matter, just as the dismissal of that lawsuit does not matter.

{¶11} We therefore find that Hazelwood's motion to revive the 2009 dormant judgment was not barred by the doctrine of claim preclusion.

**The Tral Judge Properly Conducted the Judgment-Revival Hearing**

{¶12}  Helfrich argues that the trial judge was biased and should have recused, and he claims, too, that the judge treated him unfairly because Helfrich had no lawyer. We turn to those two arguments next.

*Recusal Was Not Required*

{¶13}  We begin by addressing Helfrich's argument that the trial judge should have recused himself.  Notably, Helfrich never asked the trial judge to step off the case and did not ask the chief justice to remove him.  "Generally, the proper avenue for redress when a party believes that the trial judge is biased is the filing of an affidavit of [disqualification] . . . with the Supreme Court of Ohio."  *State v. Johnson*, 140 Ohio App.3d 385, 391 (1st

Dist. 2000), *see also State v. Bacon*, 2005-Ohio-6238, ¶ 66 (8th Dist.) (holding that an appellate court lacks jurisdiction to void the judgment of a trial court in response to a claim of judicial bias or prejudice because an aggrieved party's exclusive remedy is to file an affidavit of disqualification under R.C. 2701.03).

**{¶14}** Nonetheless, we have reviewed the record in this case, and we find no merit in Helfrich's argument that the trial judge was either biased or harbored a grudge. "Judicial bias is demonstrated by 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *State v. Loudermilk*, 2017-Ohio-7378, ¶ 21 (1st Dist.), quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.

**{¶15}** Helfrich cites to several comments made by the trial judge — "take the chip off your shoulder for a minute" and "I would like to challenge you to complete presenting your argument please" — as examples of what he says is prejudice or animosity on the part of the judge. Helfrich also refers to other cases in which he has appeared before the trial judge, but any concerns tied to those other cases are not part of our record in this case.

**{¶16}** Reading the trial court's comments from the judgment-revival hearing convinces us that the judge did not express or exhibit any hostile feelings, ill will, undue friendship, or favoritism toward either party. Our review of the record provides no evidence that the trial judge reached a decision based on bias against Helfrich, and we

see no indication that the judge conducted the hearing in an unfair way. As a result, we disagree with Helfrich's view that the trial judge had a duty to recuse himself.

### *Helfrich's Choice to Represent Himself Did Not Lead to an Unfair Outcome*

{¶17} We next address Helfrich's argument that the trial judge at the judgment-revival hearing favored Hazelwood because Hazelwood (unlike Helfrich) was represented by counsel. That alleged favoritism, Helfrich says, led the judge to give credence to statements by Hazelwood's counsel David Dye that were not under oath and that — according to Helfrich — were untrue.

{¶18} In response to concerns that Helfrich raised about this issue at the hearing itself, the trial court informed him that statements made by attorney Dye were not evidence. That strikes us as an entirely appropriate and accurate response. *See State v. Andrews*, 2024-Ohio-5023, ¶ 49 (4th Dist.), quoting *State v. Clark*, 2016-Ohio-2705, ¶ 45 (4th Dist.) ("'it is well settled that statements of counsel are not to be considered as evidence'").

{¶19} Helfrich also contends that attorney Dye was treated differently because he is a lawyer and Helfrich (who was appearing without counsel) is not. At one point in the hearing, attorney Dye objected to some of Helfrich's testimony, claiming that Helfrich, as a non-lawyer, ought not be permitted to express his views about the law. The trial judge overruled that objection and said that Helfrich could offer testimony about the law, though the judge did note that "the court is going to be the one that is going to make the legal judgment." We see no sign of any unfairness on the part of the judge in that exchange.

{¶20} The Supreme Court of Ohio has "repeatedly declared that 'pro se litigants . . . must follow the same procedures as litigants represented by counsel.'" *State ex rel.*

*Neil v. French*, 2018-Ohio-2692, ¶ 10, quoting *State ex rel. Gessner v. Vore*, 2009-Ohio-4150, ¶ 5. Non-attorney litigants who choose to represent themselves in court are also "'presumed to have knowledge of the law and legal procedures and . . . are held to the same standard as litigants who are represented by counsel.'" *State ex rel. Fuller v. Mengel*, 2003-Ohio-6448, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Serv.*, 145 Ohio App.3d 651, 654 (10th Dist. 2001).

**{¶21}** Helfrich chose to represent himself at the judgment-revival hearing. The trial court had every right to expect both parties — whether represented by counsel or not — to follow the same rules.

**{¶22}** Our review of the record shows that the trial judge permissibly provided some guidance to Helfrich about court procedures, but the trial judge was otherwise appropriately evenhanded in listening to and considering both parties' arguments. We find no error in the trial court's handling of a hearing at which one party was represented by counsel and the other was not.

## The Trial Court Properly Took Judicial Notice of Its Own Docket

**{¶23}** In ruling last year on Hazelwood's motion to revive the dormant 2009 judgment, the trial court evidently examined some court filings on the trial court's docket in the same case. (By "same case," we mean that the 2009 judgment, the post-judgment filings that the trial court examined, and the motion seeking the revival of the 2009 judgment were all filed in the same court under the same case number.) That examination and consideration of some documents on the court's own docket was a misstep by the trial court, Helfrich says, because Hazelwood had not provided to the trial judge any certified or authenticated copies of those documents.

**{¶24}** We readily conclude that the trial court did nothing wrong by considering the earlier filings in the case. The Supreme Court of Ohio has repeatedly noted that "'[i]t is axiomatic that a trial court may take judicial notice of its own docket.'" *State ex rel. Roush v. Hickson*, 2023-Ohio-1696, ¶ 7, quoting *Indus. Risk Insurers v. Lorenz Equip. Co.*, 69 Ohio St.3d 576, 580 (1994); *see also Helfrich v. Madison*, 2012-Ohio-551, ¶ 39 (5th Dist.) ("the court has the power to take judicial notice of its own records and judicial notice of its own actions in earlier proceedings of the same case"). This court has also agreed with dicta in a prior decision that "the trial court can take judicial notice of prior lawsuits filed in its own court." *Id*. at ¶ 41, citing *Lansing v. Hybud Equip. Co.*, 2002-Ohio-5869, ¶ 16 (5th Dist.).

**The Trial Court Properly Revived the Dormant Judgment**

**{¶25}** We turn next to the merits of the trial court's ruling, and we conclude that the trial court rightly found that revival of the dormant 2009 judgment was the proper outcome.

**{¶26}** We note, first, that we have reviewed the trial judge's interpretation of the relevant statutes with fresh eyes and without giving deference to the judge's reading of those statutes. We walk a well-worn path in doing so. *See State ex rel. AutoZone Stores, Inc. v. Industrial Comm'n.*, 2024-Ohio-5519, ¶ 23 ("The meaning of a statute is a question of law that we review de novo"); *State v. Leitwein*, 2020-Ohio-3698, ¶ 8 (5th Dist.) ("Because the assignment of error involves the interpretation of a statute, which is a question of law, we review the trial court's decision de novo").

**{¶27}** And certainly any legal questions surrounding the revival of a judgment are addressed by state statutes. *See Am. Gen. Fin. v. Copley*, 2013-Ohio-2455, ¶ 5 (10th

Dist.) ("Revivor of a dormant judgment is a statutory proceeding")). *See also Bazzoli v. Larson*, 40 Ohio App. 321, 326 (5th Dist. 1931) ("garnishee proceedings are purely a right created by statute").

*A Quick Primer on the Revival of Judgments*

**{¶28}** When a party does not take action to collect on a judgment within the five-year period after that judgment is issued — or within five years after certain attempts to collect on that judgment have been made — the judgment becomes dormant. See R.C. 2329.07(B)(1) ("A judgment . . . is dormant and shall not operate as a lien against the estate of the judgment debtor unless [certain steps are taken] . . . within five years from the date of the judgment or any renewal of the judgment"). A dormant judgment "cannot be enforced." *State v. T.W.C.*, 2024-Ohio-49, ¶ 18 (10th Dist.). "Dormancy does not remove or discharge the judgment, but it wipes out any lien created by the judgment." *State ex rel. Stone v. Norman*, 2024-Ohio-263, ¶ 28 (10th Dist.) (quotations and brackets omitted).

**{¶29}** Dormant judgments can, though, be revived under R.C. 2325.15. "Seeking to revive a judgment does not involve the creation of a new action, but merely the institution of a special proceeding within the original action." *Cadles of Grassy Meadows, II, L.L.C. v. Kistner*, 2010-Ohio-2251, ¶ 9 (6th Dist.), citing *Bartol v. Eckert*, 50 Ohio St. 31, 45 (1893). *See also Donellan Jerome, Inc. v. Trylon Metals, Inc.*, 270 F.Supp. 996, 998 (N.D. Ohio 1967) ("A proceeding to revive a judgment is not a new action but merely a motion in the original suit").

**{¶30}** "[U]pon revival of the dormant judgment, a judgment creditor may execute upon the judgment." *Columbus Check Cashers v. Cary*, 2011-Ohio-1091, ¶ 17 (10th

Dist.).  *See also Thompson v. Slone*, 68 Ohio App.3d 575, 576 (10th Dist. 1991) ("reviving a judgment once dormant has the effect of creating a new judgment for purposes of subsequent execution").

{¶31}  In its 2024 motion to revive the 2009 judgment, Hazelwood indicated that it had taken steps to execute on that judgment by filing garnishment requests with the trial court in 2013 and 2014.  Those steps are important, because a garnishment action is the kind of "aid of execution" that can, according to R.C. 2329.07(A), "renew[ ] . . . a judgment" and thus push back the date when that judgment would otherwise become dormant.  *See also Bazzoli*, 40 Ohio App. at 326 ("a proceeding in aid of execution . . . is in fact a garnishment after judgment").  Without any such steps, a judgment issued in 2009 would become dormant five years later in 2014.  With those steps, dormancy would not occur until five years after those steps had been taken.  If Hazelwood pursued collection efforts as late as 2014, dormancy would not have taken effect until 2019.

{¶32}  The date of dormancy is important, in turn, because a creditor's request to revive a dormant judgment must be filed "within ten years" from the date when the judgment has become dormant.  R.C. 2325.18(A).  "If sufficient cause is not shown to the contrary, the judgment," according to R.C. 2325.17, "shall stand revived" when a request to revive it is filed.

### Hazelwood Demonstrated Its Entitlement to the Revival of the 2009 Judgment

{¶33}  So why do the various statutes and cases cited above matter?  They matter because Helfrich alleges that the 2009 judgment became dormant in June 2014 (five years after it was issued) and then, he claims, the ten-year period for reviving that judgment had already run out by the time Hazelwood filed its revival request in the trial

court in August 2024.  Hazelwood, on the other hand, argues that its collection efforts that extended into 2014 pushed back the starting time for the running of the five-year dormancy clock, so that, according to Hazelwood, the judgment did not become dormant until 2019.  Given that it would have then had a ten-year window from that time to seek the revival of the dormant judgment, Hazelwood contends that its 2024 revival request in the trial court was filed long before that ten-year window had closed.

{¶34}  Hazelwood, in its effort to show the trial court that Hazelwood's 2024 revival request was being made within the ten-year window set by R.C. 2325.18(A), asked the trial court to take judicial notice of certain filings — including Hazelwood's 2013 and 2014 garnishment requests — on the trial court's own docket.  As we addressed above, that was a permissible request, and the trial court properly considered those 2013 and 2014 filings on its own docket in the case.

{¶35}  The record in this case shows, then, that Hazelwood's 2024 motion seeking the revival of the 2009 judgment was timely.  The judgment had been renewed by Hazelwood's 2013 and 2014 garnishment efforts, and the judgment became dormant five years after the last of those efforts.  Given that Hazelwood's ten-year window for reviving that dormant judgment therefore began in 2019, the 2024 revival request from Hazelwood was undoubtedly timely.

**Helfrich Failed to Establish a Defense to Hazelwood's Revival Request**

{¶36}  In his challenge to the trial court's ruling, Helfrich argues that the trial judge failed to consider the evidence and arguments that he had presented as defenses to Hazelwood's motion for revival.

**{¶37}** R.C. 2325.17 calls for a judgment debtor to be given an opportunity to show the trial court why a judgment should not be revived. "[A] motion to revive a judgment can be defeated if the judgment debtor shows the judgment has been paid or settled, or is barred by the statute of limitations." *Mansfield Truck Sales & Serv., Inc. v. Fortney*, 2009-Ohio-2686, ¶ 6 (5th Dist.). The trial court held a hearing on the motion for revival, and Helfrich was permitted to testify and offer exhibits then.

**{¶38}** Helfrich acknowledges that he is no longer challenging the validity of the 2009 judgment against him but rather is asserting that the judgment has been satisfied or settled. Helfrich testified at the hearing last year in the trial court that he has written checks to Hazelwood year after year and has included some form of the words "paid in full" on the memo line of each check. A few of these checks have been sent back uncashed to Helfrich, but others have been cashed by Hazelwood and then the amount of each of those cashed checks has been reflected on Helfrich's account.

**{¶39}** Hazelwood's account for Helfrich shows all amounts owed by Helfrich, including the unpaid 2009 judgment. Hazelwood has not treated the checks with the "paid in full" notation as a settlement of the full amount owed by Helfrich. The account statements offered at the hearing show that Hazelwood continues to carry forward the 2009 balance owed by Helfrich.

**{¶40}** "'Accord and satisfaction is an affirmative defense to a claim for money damages. If a party against whom a claim for damages is made can prove accord and satisfaction, that party's debt is discharged by operation of law.'" *Byars v. RLG Builder, Inc.*, 2010-Ohio-2869, ¶ 31 (5th Dist.), quoting *Allen v. R.G. Indus. Supply*, 66 Ohio St.3d 229, 231 (1993). In Helfrich's appeal of the 2009 judgment, this court outlined the

elements of the affirmative defense of accord and satisfaction as follows: the presence of an accord (meaning an offer and an acceptance); the accord has been carried out; and the accord and satisfaction was supported by some form of consideration. *Hazelwood*, 2010-Ohio-2871, at ¶ 34 (5th Dist.), citing *Allen* at 231-232. This court also acknowledged the two safeguards that the Supreme Court of Ohio has explained must be present for a valid accord and satisfaction: "'[1] there must be a good-faith dispute about the debt and [2] the creditor must have reasonable notice that the check is intended to be in full satisfaction of the debt.'" *Id*. at ¶ 35, quoting *Allen* at 232.

{¶41} "'An accord and satisfaction is the result of an agreement between the parties, and this agreement, like all others, must be consummated by a meeting of the minds of the parties. Mere cashing of the check d[oes] not bring the transaction within the rule of accord and satisfaction.'" *Lightbody v. Rust*, 2003-Ohio-3937, ¶ 22 (8th Dist.), quoting *Warner Elevator Mfg. Co. v. Higbee*, 53 Ohio App. 546, 548 (1st Dist. 1935). Because an accord and satisfaction is an agreement between the parties, it cannot be established "unless the creditor accepts the lesser amount with the intention that it constitutes a settlement of the claim." *State ex rel. Shady Acres Nursing Home, Inc. v. Rhodes*, 7 Ohio St.3d 7, 8 (1983), citing *Warner Elevator* at 548.

{¶42} In this case, there was no good-faith dispute about the debt. Hazelwood had obtained a valid and final judgment and was attempting to collect that judgment. The record is clear that Hazelwood and Helfrich did not reach an agreement for Hazelwood to accept an amount that was less than the amount awarded in the 2009 judgment. The evidence at the hearing shows that Hazelwood continued to carry over the balance owed by Helfrich on the account statements. Helfrich unilaterally and repeatedly wrote out

checks for the amount of the association dues and noted "paid in full" on the memo line. Hazelwood applied the checks to the annual association dues only. Based upon the evidence in the record, we cannot say that Hazelwood's act of cashing Helfrich's checks establishes accord and satisfaction of the amount owed on the 2009 judgment.

{¶43} Helfrich also failed to establish the defense of payment of the 2009 judgment. Helfrich relies upon the same canceled checks and account statements in arguing that he has paid the 2009 judgment in full. But Helfrich has failed to explain how the checks written for the "annual assessment" — in the amount of the homeowners' association dues, and no more — was payment for both his annual dues and the 2009 judgment. Helfrich has repeatedly made the notation of "paid in full" on his checks in an apparent attempt to avoid paying the full amount of the 2009 judgment. As we explained above, though, Hazelwood's act of cashing the checks did not operate as an accord and satisfaction or a discharge of the amount owed by Helfrich on the 2009 judgment.

{¶44} In our review of the record, we find that the trial court did not preclude Helfrich from presenting testimony or evidence on his defenses to the requested revival of the 2009 judgment. After considering the testimony and evidence presented at the hearing, we find that Helfrich has failed to establish that the judgment has been paid or settled.

## The Trial Court's Judgment Is Not Against the Manifest Weight of the Evidence

{¶45} Finally, Helfrich argues that the trial court's judgment is against the manifest weight of the evidence and that the trial court erred by failing to elaborate on its decision in the judgment entry.

**{¶46}** The standard of review for a manifest-weight-of-the-evidence argument in a civil case is the same standard applied in criminal cases. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. "A reviewing court is to examine the entire record and determine 'whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *Lambert's Pop A Top, LLC v. Mills*, 2017-Ohio-8073, ¶ 32 (5th Dist.), quoting *Eastley* at ¶ 20.

**{¶47}** The trial court issued a one-page judgment entry overruling Helfrich's objections to Hazelwood's motion for revival. The trial court stated that it heard testimony, entertained arguments from both parties, and reviewed the evidence, but the trial court did not make any specific findings.

**{¶48}** We have reviewed the record in this case, including the transcript of the trial-court hearing, and we determined above that Hazelwood's motion for revival was timely and that Helfrich failed to establish a defense to the revival of the dormant 2009 judgment. Because we have not given deference to the trial court's ruling on the motion for revival, it is of no consequence that the trial court's judgment entry did not include any specific findings.

**{¶49}** For the reasons explained above, the judgment of the Licking County Municipal Court reviving the September 8, 2009 judgment is affirmed.

**{¶50}** Any costs must be paid by appellant James Helfrich.

By: Gormley, J.

King, J. concurs,

Hoffman, P.J. dissents.

*Hoffman, P.J., dissenting*

**{¶51}**  I respectfully dissent from the majority opinion.  I find the dismissal of the 2020 action bars revival of the 2009 judgment and would reverse the judgment of the trial court.

**{¶52}** The judgment in the instant case became dormant on March 11, 2019. While the judgment was dormant, Appellee filed a small claims complaint in the Licking County Municipal Court against Appellant on October 8, 2020.  The small claims complaint was admitted into evidence as Defendant's Exhibit 3.  Tr. 37.  In the complaint, Appellee sought damages from Appellant on an account in the amount of $4,432.73.  The account statement was attached to the complaint as Exhibit A.  The Exhibit details the account beginning with dues owed by Appellant to Appellee in 2007, and included all amounts Appellant owed Appellee from April 8, 2007, through September 28, 2020.  The total amount due on the account from 2007 through 2020 was $4,432.73, the same amount Appellee requested in its complaint.  Therefore, it is apparent from the record the 2020 action included the same amounts which were covered by the 2009 judgment Appellee sought to revive in the instant case.

**{¶53}** The 2020 complaint was transferred to the Licking County Common Pleas Court.  The case was dismissed for failure to prosecute after Appellee failed to pay the transfer fee.  Appellee's motion for Civ. R. 60(B) relief from the dismissal was successful; however, on appeal, this Court reversed the judgment granting Civ. R. 60(B) relief and reinstated the original dismissal.

**{¶54}** The dismissal in the 2020 case did not expressly state if it was with or without prejudice.  However, this Court has previously held when a dismissal for failure

to prosecute is silent as to whether the dismissal is with or without prejudice, the dismissal is with prejudice and operates as an adjudication on the merits:

> Civil Rule 41(B)(1) provides, in pertinent part: "where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim." Civil Rule 41(B)(3) provides, "a dismissal under division (B) of this rule * * * operates as an adjudication on the merits unless the court, in its order for dismissal, otherwise specifies." Thus, Civil Rule 41(B)(1) operates as an adjudication on the merits unless otherwise specified by the court. Civil Rule 41(B)(3); *Thillberg v. Major*, 11th Dist. Trumbull No. 90–T–4487, 1991 WL 206625 (Sept. 30, 1991).

**{¶55}** *Freedom Mtge. Corp. v. Hufford*, 2017-Ohio-1111, ¶ 12 (5th Dist.).

**{¶56}** I would therefore find the February 2, 2021 judgment of the trial court operated as a dismissal on the merits of Appellee's claims against Appellant from 2007 through 2020, including the amounts owed by Appellant which were included in the September 8, 2009 dormant judgment.

**{¶57}** A dormant judgment "may not be enforced, and is thus without legal effect, unless the judgment is revived in accordance with R.C. 2325.15." *Auto Now Acceptance Co., LLC v. Brickey*, 2020-Ohio-3447, ¶ 9 (4th Dist.). The filing of a motion to revive a judgment does not create a new action, but merely institutes a special proceeding within the original action. *Cadles of Grassy Meadows, II, L.L.C. v. Kistner*, 2010-Ohio-2251, ¶

9 (6th Dist.). However, a revived judgment is not a continuation of the dormant judgment, but in essence creates a new judgment which a judgment creditor may seek to enforce. *Auto Now Acceptance* at ¶ 9.

**{¶58}** In the instant case, rather than seeking to revive the dormant 2009 judgment, Appellee chose to file a new action in 2020, which included the amounts awarded to Appellee in the dormant 2009 judgment. I find Appellee's election to seek the same damages in a new complaint rather than first seeking a revivor of the dormant 2009 judgment had collateral res judicata impact upon the 2009 judgment. While, as discussed by the majority, res judicata or collateral estoppel could or should have prevented Appellee from ultimately obtaining a second, duplicative award on the 2020 complaint of the amounts previously awarded in the 2009 judgment, res judicata was not raised as a defense by Appellant in the 2020 case. Rather, the entire action filed by Appellee in 2020, was dismissed with prejudice. This later judgment itself is also entitled to res judicata effect, and the practical effect of the dismissal with prejudice was to preclude Appellee from collecting from Appellant any of the fees owed on Appellant's account which were sought as damages in the 2020 complaint. This amount included the damages previously awarded in the dormant 2009 judgment.

**{¶59}** Although the motion to revive the dormant 2009 action is a special proceeding within the original action and not a "new" action, the revivor of the dormant judgment created a new judgment which Appellee could seek to enforce, despite the fact the res judicata effect of the 2020 judgment would bar collection of damages sought therein. The 2020 judgment was the most recent judgment concerning the damages awarded in the 2009 judgment, and the motion to revive the dormant judgment sought to

relitigate the same issue settled by the dismissal with prejudice of the 2020 action: I would therefore find revivor of the 2009 dormant judgment is barred by the doctrine of res judicata.

{¶60} I would sustain Appellant's thirteenth assignment of error, vacate the judgment of the trial court, and enter final judgment finding the revivor action barred by res judicata.